**Bertrand R. FAVREAU, II, Jeffrey D. Thompson, Donna Marie McCurdy, Ryan D. Mumme, Bridgit Hallas, Scott Laberge, Thomas L. Fryer, Lee**

---

C. Marshall, Joseph Tingerthal, James W. Fuller, Roger F. Sablone, Jr., Robert A. Bell, Brenda G. Vanness Crista, Patrick N. Turner, and Charles D. Wiggins, Plaintiffs–Appellants,

v.

UNITED STATES, Defendant–Appellee.

No. 01–5140.

United States Court of Appeals,
Federal Circuit.

Dec. 30, 2002.

Michael A. Feldman, of Brunswick, Maine, argued for Plaintiffs–Appellants.

Alan J. Lo Re, Trial Attorney, Washington, DC, with him on the brief were Robert D McCallum, Jr., Assistant Attorney General; David M. Cohen, Director; and Bryant G. Snee, Assistant Director. Of counsel on the brief was Cdr. Robert Schapler, Department of the Navy, Office of the Judge Advocate General, of Washington, DC, for Defendant–Appellee.

Before MAYER, Chief Judge, NEWMAN and CLEVENGER, Circuit Judges.

PER CURIAM.

This is a class action suit brought by former members of the armed forces whose enlistment or reenlistment bonuses were recouped by the United States after they were separated from the armed forces for failing to comply with applicable weight control or physical fitness standards. Upon enlisting or reenlisting, each service-member received a monetary bonus, which served as additional compensation to be earned on a pro rata basis during the term of enlistment or reenlistment. While the facts applicable to each service-member differ slightly, military records uniformly reflect that they: (1) received dietary counseling and participated in remedial weight or fitness programs; (2) were warned that failure to meet service standards might result in discharge; and (3) failed to comply with weight or fitness standards for non-medical reasons.

Between the time of enlistment or reenlistment and discharge the Defense Department issued two memoranda addressing separation categories. In April of 1983, Assistant Secretary of Defense Lawrence Korb, under authority delegated by the Secretary of Defense, promulgated a list of separation categories that would result in recoupment. The Korb memorandum was later submitted to the Military Pay and Allowance Committee in a proposal to revise paragraph 10942 of the Department of Defense Pay Manual. On March 10, 1992, Assistant Secretary of Defense Christopher Jehn issued a memorandum creating a new separation category called "weight control failure" and directed use of this category by all of the armed forces. The Jehn memorandum stated that the "weight control failure" category was created to resolve disparity among service separation policies and provide for equitable treatment.

In 1998, Favreau was separated from the Army for failure to comply with weight control standards. The Army recouped the unearned portion of his reenlistment bonus. Favreau initiated a civil action in the District Court for the District of Maine challenging the recoupment, and the case was transferred to the United States Court of Federal Claims. Count one of the complaint alleged that the government breached enlistment or reenlistment contracts. Count two alleged that the recoupment of the unearned portion of bonuses was an illegal exaction because it violated the Department of Defense Financial Management Regulations and provisions of the Military Pay and Allowance Act, 37 U.S.C. §§ 308 and former 308a.[1]

The court granted the government's motion to dismiss count one of the complaint, holding that the duty to pay service-members their bonuses is not contractual. It granted the government's motion for summary judgment as to count two, holding that the Department of Defense's interpretation of the statutory provisions that permit recoupment when service-members fail to maintain weight control or physical fitness standards was reasonable and consistent with congressional intent. The court also denied Favreau's cross-motion for summary judgment, holding that the Department of Defense's interpretation of the statutory provisions to permit recoupment when service-members fail weight or physical fitness standards was reasonable and that Department of Defense Financial Management Regulations are not inconsistent with sections 308 and former 308a. The court also said the armed forces' recoupment practice did not violate Department of Defense Financial Management Regulations.

For the reasons well stated in its opinion reported at 49 Fed. Cl. 635 (2001), which we adopt and set out here in an attachment, the judgment of the Court of Federal Claims is affirmed.

*AFFIRMED.*

## ATTACHMENT

**Bertrand R. FAVREAU, II., et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 99–339C.**

United States Court of Federal Claims.

June 28, 2001.

Michael A. Feldman, Brunswick, Me., for plaintiffs.

Alan J. Lo Re, Commercial Litigation Branch, Civil Division, Department of Justice, argued for defendant. With whom on the brief were Reid Prouty, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Bryant G. Snee, Assistant Director, Stuart E. Schiffer, Acting Assistant Attorney General, David M. Cohen, Director, and LCDR John Hannink, Office of the Judge Advocate General, Department of Navy.

## OPINION

BRUGGINK, Judge.

This is a class action brought by former members of the United States Armed Forces who were separated from their respective services[1] because they failed to meet weight and/or physical fitness standards. Plaintiffs do not challenge their separations but instead challenge the services' recoupment of bonuses to which they became entitled at the time they agreed to enlist or re-enlist in the services.

---

**1.** Effective October 1, 2000, 37 U.S.C. § 308a was repealed by amendments made to subsection (b) of 37 U.S.C. § 309.

**1.** The term "services" refers to the Army, Navy, Air Force, and Marine Corps.

There are two causes of action. Count One alleges that the government breached plaintiffs' enlistment or reenlistment contracts. Count Two alleges that recoupment was an illegal exaction because it violated provisions of the Military Pay and Allowances Act which authorize the payment and recoupment of bonuses [2] and the Department of Defense Financial Management Regulations ("FMR").[3] Pending are defendant's motion to dismiss and plaintiffs' motion for summary judgment with respect to Count One.[4] Also pending are cross motions for summary judgment with respect to Count Two. The motions have been fully briefed and orally argued. For the reasons discussed below, we grant defendant's motion to dismiss Count One and grant defendant's motion for summary judgment with respect to Count Two.

## BACKGROUND

Each service has the authority to determine the standards that individuals must meet to remain a member of the United States Armed Forces. *See* 10 U.S.C.

§ 1169 (1994). It is undisputed that the representative plaintiffs failed to satisfy such requirements with respect to weight control or physical fitness. This was the underlying reason for their discharges. It is undisputed, moreover, that plaintiffs' failures to meet weight or fitness standards were not caused by medical conditions. Nor were they separated until they had received counseling, had participated in remedial weight or physical fitness programs, and had been warned that failure to meet standards might result in discharge. Plaintiffs did not ask to be separated, however.

When a service member is separated for failing these or any other standards, a reason for the separation is assigned pursuant to directives of the Secretary of Defense. DoD Directive 1332.14 ¶ E.2 (Dec. 21, 1993). This Directive sets out guidelines for the separation of servicemembers and establishes certain grounds for discharge, although the services in their individual regulations may create additional reasons.[5] Directive 1332.14, Pt. 1,

---

**2.** 37 U.S.C. §§ 308 and 308a (1994 & Supp. IV 1998).

**3.** DoD FMR Vol.7a, Ch.9, Special Pay: Enlistment and Reenlistment Bonus–Enlisted Members, ¶¶ 0901–090406 (2000).

**4.** In defendant's initial dispositive motion, it moved to dismiss plaintiffs' contract claim pursuant to 12(b)(1) for a lack of subject matter jurisdiction.

**5.** Navy regulations, for example, provide for the following:

Expiration of Service Obligation
Selected Changes in Service Obligation
Convenience of the government
Disability
Defective Enlistments and Inductions
Entry Level Performance and Conduct
Unsatisfactory Performance
Homosexual Conduct

Drug Abuse Rehabilitation Failure
Alcohol Abuse Rehabilitation Failure
Misconduct
Separation in Lieu of Trial by Court Martial
Security
Unsatisfactory Participation in the Ready Reserve
Weight Control Failure

Secretary of the Navy Instruction ("SECNAVINST") 1910.4B (29 May 1996). The services may alter the name somewhat or may choose to combine certain categories. For instance, the Air Force combines the alcohol and drug abuse rehabilitation *failure* under one category called "substance abuse treatment failure." *See* Air Force Instruction ("AFI") 36–3208, Ch. 5, Section F (14 October 1994). For the most part, the other services' regulations contain substantially the same reasons for separation. *See* Army Reg. 635–200 (26 July 1996); AFI 36–3208 (14 Oct. 1994); Marine Corps Order ("MCO") P1900.16E (18 Aug. 1995).

¶ P. The precise separation categories assigned with respect to plaintiffs thus varied by service and depending on when they were discharged. When the underlying reason for separation was weight control failure or failure of physical standards, one of three separation categories [6] were used: unsatisfactory performance,[7] convenience of the government, and, after 1992, weight control failure.[8]

It is also undisputed that when one of these separation categories was assigned due to underlying issues of weight control failure or lack of physical fitness, the services each recouped unearned portions of the service member's enlistment or re-enlistment bonus. Hence this litigation.

There are two code provisions governing recoupment, one dealing with enlistment bonuses and the other with reenlistment bonuses. They provide in pertinent part:

(d)(1) A member who *voluntarily, or because of his misconduct, does not complete the term of enlistment* for which a bonus was paid to him under this section . . . shall refund the percentage of the bonus that the unexpired part of his additional obligated service is of the total reenlistment or extension period for which the bonus was paid.

37 U.S.C. § 308(d)(1)(emphasis added).

(b) Under regulations prescribed by the Secretary of Defense . . . a person who *voluntarily, or because of his miscon-*

---

6. "Unsatisfactory performance" and "convenience of the government" can be considered separation categories in that they can embrace more than one type of underlying cause. For example, in the Air Force, a member can be separated under the category "unsatisfactory performance" for failing "to meet minimum fitness standards," for failing to "maintain standards of dress and personal appearance . . .," for failing to "progress in on-the-job training . . .," or for "irresponsibility in the management of personal finances." *See* AFI 36–3208, Ch.5, ¶ 5.26, 26.2, 26.3, 26.4. Similarly, a member can be separated under the category "convenience of the government" in order to, among other things, further his or her education, because he or she is a sole surviving son or daughter, or a conscientious objector. *See* AFI 36–3208, Ch. 3, Section B, ¶ 3.18, ¶ 3.12, ¶ 3.16 (14 October 1994).

7. Until March 10, 1992, the Air Force and Marine Corps separated members who failed weight standards under the category "unsatisfactory performance." All of the services, except the Navy, currently separate members who fail fitness standards under that category as well. *See* Army Reg. 635–200 Ch. 13–2(f) (stating that separation proceeding for unsatisfactory performance is required for soldiers without medical conditions who fail Army Physical Fitness Test two consecutive times); Air Force Instruction 36–3208 (14 Oct. 1994) (stating that failure to meet minimum fitness

standards for reasons not related to disability is a possible basis for separation under the category for unsatisfactory performance); Marine Corps Sep. and Ret't Man. P1900.16E (18 Aug. 95) P6206 at 6–19 (interpreting the failure of fitness tests to be "[p]erformance of assigned tasks and duties in a manner that is not contributory to unit readiness and/or mission accomplishment . . .," which is one of the general criteria for an "unsatisfactory performance" separation). The Navy, because it has a combined weight and physical fitness program, separates members who fail either weight or fitness standards under the same category, "weight control failure."

8. The Army and Navy are the only services to have separated members who fail weight or fitness standards under the category for "the convenience of the government." The Navy separated members who failed weight and fitness standards under this category until March 3, 1993, and the Army separated members who failed weight standards under this category until June 11, 1993. These services stopped using the category in response to the Jehn memo, see *infra* p. 11. Since the Jehn memo was issued, a service-member who fails weight standards is separated for "weight control failure." The Army uses "failure to meet body fat standards." *See* Army Reg. 635–200, Ch. 18, p.69 (26 June 1996).

*duct, does not complete the term of enlistment* for which a bonus was paid to him under this section ... shall refund that percentage of the bonus that the unexpired part of his enlistment is of the total enlistment period for which the bonus was paid.

37 U.S.C. § 308a(b)(emphasis added).

The Secretary of Defense is granted explicit authority to implement these provisions through regulations, and has done so. Those regulations are considered below. A complete understanding of the services' interpretation of these code sections requires examination of additional sources, however: specifically, the separation directive referenced above, memoranda, and several affidavits unique to the litigation. The court will assume for the moment that it can rely on these affidavits for the purpose of setting out the Secretary's interpretation of the statutory and regulatory language.

Bonuses are not offered to all personnel. Rather they are used as incentives to recruit or keep individuals with certain specialties. The representative's enlistment "contracts" contain, for example, such language as the following: "I fully understand that continued entitlement to the Enlistment Bonus may be terminated and a pro-rata portion of my Enlistment Bonus may be recouped if I am considered not technically qualified in the bonus specialty ... because (a) I am no longer classified in that NEC ... for any of the following reasons within my control: ... loss of any other mandatory qualification for effective performance ... when such ... loss is voluntary...." Def.'s Summ. J. and Mot. to Dismiss App. II at 345.

Insofar as relevant here, recoupment is only possible with respect to those who "voluntarily" do not complete their term of service.[9] The Department of Defense's (DoD) interpretation of the term "voluntarily" was furnished by Colonel Bobby A. Little in his affidavit. Colonel Little is Director, Officer/Enlisted Personnel Management in the Office of the Secretary of Defense (OSD). He explains that the Director of Officer/Enlisted Personnel Management (OEPM) with the OSD is delegated authority for, among other things, recoupment practices and policies service-wide. OEPM is also responsible for implementing directives of the Secretary of Defense or the Secretary's designees. OEPM, according to Colonel Little, has

> determined that the question whether an individual has failed to complete a term of enlistment "voluntarily" depends on whether the service-member was separated for engaging in conduct that is within the control of the service-member but incompatible with military service. In that regard, we have not limited recoupment to separations granted at the request of the service-member; rather, even where the military service initiates the separation, we have concluded that recoupment is appropriate if the conduct that resulted in the separation was voluntary, i.e., within the service-member's control.
>
> . . . .
>
> ... The [separation] codes that trigger recoupment are agreed upon by the services and my office ....

DoD thus interprets the term "voluntarily" to refer to whatever the service member did or did not do to prompt separation. So long as there is counseling and an

---

**9.** Although the statutes provide that recoupment is also appropriate when a service member fails to complete a term because of misconduct, defendant justifies the government's recoupment based on its interpretation that the plaintiffs have failed to complete their terms voluntarily.

opportunity to overcome deficiencies, and so long as persons with medically-diagnosed problems that interfere with weight reduction or maintaining physical fitness may not be separated for weight control failure or lack of physical fitness, the failure to meet standards is deemed volitional. The focus is thus not on the characterization of the separation itself but on the service member's actions or inactions leading to separation.

Colonel Little goes on to explain that, in order to implement its interpretation of the recoupment statutes, DoD has designated certain separation categories for use when the underlying reason for separation is weight control failure or lack of physical fitness. These have varied over time and by service, but they consist of the three categories used to separate plaintiffs in this case: weight control failure, unsatisfactory performance, and convenience of the government. The DoD has also directed that when these categories are used due to weight control failure or lack of physical fitness, certain codes which relate to the category trigger recoupment.[10]

This explanation is consistent with what happened to plaintiffs here. They failed weight control or physical fitness standards; they had been afforded the oppor-tunity to meet those standards; they did not have medical problems preventing compliance; they were separated under one of the three triggering separation codes; and their bonuses were recouped.

Portions of this practice can be traced directly to the separation directives and to memoranda that will be examined below. The critical connection between DoD practice and the phrase "voluntarily ... fails to complete the term of service," however, is only drawn in writing by Col. Little's affidavit. The underlying rationale is not captured in the regulations governing financial matters, including those dealing with recoupment.

The connection between recoupment and separation categories is established in two memoranda. The first is an April 13, 1983 memo from Assistant Secretary of Defense, Lawrence Korb,[11] with respect to when the services were to recoup bonuses. In pertinent part, the Korb memo provides:

> The purpose of this memorandum is to ... standardize the reasons for which recoupment of bonuses is required.
>
> . . . .
>
> Attached is a list of reasons from the Enlisted Separations Directive (DoDD 1332.14) ... for which we will recoup

---

**10.** The affidavit of Erwin J. Wybenga, Deputy Director of the Defense Joint Military Pay System of the Defense Finance and Accounting Service (DFAS) amplifies Little's explanation.

**11.** The Korb memo is a regulation entitled to the force and effect of law. *See Hamlet v. United States*, 63 F.3d 1097, 1105 (1995) (setting out four part test to determine if agency publication is entitled to force and effect of law). Assistant Secretary of Defense Korb had the authority to issue the memorandum. Under the recoupment provisions, the Secretary of Defense is granted the authority to prescribe regulations to carry out recoupment. 37 U.S.C. §§ 308(f) and 308a(b). The Secretary of Defense has delegated this grant of authority to the Assistant Secretary of Defense. In 1984, this delegation was to the Assistant Secretary of Defense for Manpower, Reserve Affairs, and Logistics, (MRA & L) Lawrence Korb. DoD Directive 5124.1 ¶ F.1 (July 26, 1982). Pursuant to this delegation, Korb was granted the authority to "issue instructions and one-time directive-type memoranda ... which carry out the policies approved by the Secretary of Defense in assigned fields of responsibility." DoD Directive 5124.1 ¶ F.1 (July 26, 1982). Included in his responsibilities was the compensation of service-members. *See* DoD Directive 5124.1 ¶ D.9 (July 26, 1982).

enlisted bonuses. In order to complete the standardization process, request you [sic] furnish this office a complete list of separations reasons ... used each Service. Please annotate on the Service's list the reasons/does that correspond to the attached list of separation reasons ....

After review, these lists will be provided to the OSD Comptroller for incorporation in the DoD Pay Manual.

Def's. Suppl. Br.App. at 1.

Attached to the Korb memo was a list of separation categories entitled "Enlisted Bonus Recoupment Reasons." [12] Included on the list were "Convenience of the Government" and "Unsatisfactory Performance." Not included on the list, because it was not yet a separation category, was "Weight Control Failure." The memo says nothing about limiting recoupment to those service members who request separation.

The reference in the Korb memo to the DoD Pay Manual was to what was later to become the FMR. Responsibility for incorporation of directives such as the Korb memo into the FMR fell to the Military Pay and Allowances Committee ("MPAC"), later renamed the Defense Finance and Accounting Service ("DFAS"). This organization has responsibility for drafting and maintaining financial regulations. In addition, at the direction of the Under Secretary of Defense Comptroller/Chief Finan-

cial Officer, it also has responsibility for executing recoupments. Although DFAS maintains the relevant recoupment regulations, according to Nelson Toye, the Deputy Chief Financial Officer for DoD, the substance of the regulations must come from directives of the Assistant Secretary of Defense for Force Management Policy, in this case, Korb.

After the Korb memo DFAS amended existing recoupment regulations, in pertinent part, as follows:

*Reasons for Recoupment.* For purposes of recoupment of any unearned portions of enlistment or reenlistment bonuses, the term "who voluntarily or because of misconduct" includes (but is not limited to) members separated for the reasons listed below: .

A. Transfer to Fleet Reserve, Fleet Marine Corps Reserve, or the Army or Air Force Reserve ... with release to inactive duty before expiration of the number of years' service for which a bonus was paid.

B. Marriage—female member.

C. Resignation-separation by reason of acceptance of member's resignation ....

D. As a result of a writ of habeas corpus

E. Reduction to permanent grade member voluntarily separated, or transferred to a Reserve Component if required by law, following reduction to a lower permanent grade from a higher

---

**12.** Gloria D. Harris, the individual responsible for implementing the laws, regulations, and policies related to the payment of personnel in all of the services, stated in her affidavit that:

The "reasons" for separation set forth in the [FMR] list ... were taken from the categories of separation contained within the DoD Directive and/or Service regulations that deal with the separation of enlisted personnel.

When a member's conduct results in separation under a particular category of separation contained within the separation regulations of that member's service, that category of separation is used to make the recoupment determination.

In other words, the category of separation under which a member was separated provides the proper point of entry into paragraph 090403 when making the recoupment determination.

Def's Opp. and Reply App. at 95–96.

temporary grade in which the member was erroneously reenlisted.

F.   Disability not in the line of duty.

G.   Approved sentence of court-martial or conviction by a civil court.

H.   Misconduct.

I.   Homosexuality

J.   Defective enlistment (includes erroneous and fraudulent enlistments).

K.   Entry level performance and conduct.

L.   Unsatisfactory Performance.

M.   Drug and alcohol rehabilitation failure.

N.   As Directed by the Secretary of the Military Service concerned in individual cases. Includes ... for the convenience of the government upon the application and interest of the member because of special or unusual circumstances including, but not limited to, the following:

. . .

4.   Sole surviving family member.

. . .

6.   Overweight/obesity or lack of physical fitness.

DoDPM ¶ 10942.[13] This new version of the recoupment regulation was intended to "incorporate[ ] the contents of the [Korb] memorandum of 13 April 1983." Def.'s Suppl. App. at 39.

The Korb memo was followed in March 1992 by a memo from Assistant Secretary of Defense Christopher Jehn. Jehn directed the creation of a new separation category for "weight control failure." He also directed that this category be treated the same for benefit eligibility purposes as separation for "drug and alcohol abuse rehabilitation failure." [14] Pursuant to the Korb memo, the services had been directed to recoup from members separated for drug or alcohol abuse failure. The FMR provisions with respect to recoupment have not been amended in light of the Jehn memo.

The preamble to the FMR provision refers to reasons for separation, and the ones listed are very similar to comparable categories of separation. In one notable respect, however, there is a difference. Subdivision N of ¶ 090403 references separations for the "convenience of the government," but refers to the "application and interest of the member" and lists, among other convenience separations, "overweight/obesity or physical fitness." ¶ 090403(N)(6). This gives rise to plaintiffs' argument that the services could only recoup pursuant to subdivision N and only from individuals who requested separation.

During the relevant time only the Army and the Navy used the separation category "for the convenience of the government" for members who failed to meet weight or physical fitness standards. Unlike other convenience separations, those regulations made no provision for members "applying for" or showing an "interest in" separation when the underlying reason was weight control or physical fitness failure. *See*

---

**13.**   Paragraph 10942 of the DoDPM was renumbered as ¶ 090403 when the FMR was created.

**14.**   The Jehn memo provides, in pertinent part, as follows:

   To resolve the disparity among Service separation policies and to provide for more equitable treatment of our members, I am establishing a new separation category in DoDD 1332.14, called "Weight Control Failure." When the sole reason for separation is failure to meet weight standards and the member's performance and conduct otherwise comport with established standards, the member will be separated under this category. This category is similar to existing categories of separation for Drug and Alcohol Abuse Rehabilitation Failure and will be treated similarly for benefit eligibility.

Navy Personnel Manual, Article 3620200 (15 Aug. 1991); Army Reg. 635–200, Ch. 5, ¶ 5–15 (15 Oct. 1985); Army Reg. 635–200, Ch.2, Section II, Notification Procedure, ¶ 2–2 (17 Oct. 1990).

Defendant calls attention to the fact that the preamble to the recoupment regulation states that the list is not intended to be exhaustive. It recites that "[T]he term 'who voluntarily or because of misconduct' includes (but is not limited to) members separated for the reasons listed below . . . ." ¶ 090403.

In response to the court's request for supplemental briefing, defendant filed the Nelson Toye affidavit addressed to the apparent inconsistency between the separation categories developed in response to DoD Directive 1332.14 and the list of separation categories in ¶ 090403 of the FMR. In his affidavit, Nelson Toye acknowledges that the FMR may be a less-than-faithful rendition of the Korb and Jehn memos, but he emphasizes that the FMR does not have the authority to deviate from the substance of the Korb and Jehn memos. It would be beyond the purview of DFAS to write them in that way. Its function is purely that of codifier. Defendant furnishes the relevant delegations to illustrate the respective differences of authority between DFAS and the Assistant Secretaries of Defense (for Manpower, Reserve Affairs, and Logistics as of 1983; for Force Management and Personnel as of 1992).[15]

It is undisputed that the services have, without exception, applied the FMR in a manner consistent with the government's explanation, i.e., they have not limited recoupment to personnel discharged for the convenience of the government, nor have they conditioned recoupment on "the application and interest of the member," even for discharges for the convenience of the government. Moreover, they have imposed limitations on recoupment that are consistent with DoD's position that *most* weight control or physical fitness failures are volitional, i.e., recoupment did not occur until an opportunity for improvement was afforded and there was no recoupment if there were medical reasons for failure.

## DISCUSSION

### I. Plaintiffs' Breach of Contract Claim

■ Count One of the complaint alleges that recoupment breached plaintiffs' enlistment and/or re-enlistment contracts. Plaintiffs base their contract claim on the following language in their enlistment and re-enlistment documents: "As a member of the Armed Forces of the United States, I will be: . . . (5) Entitled to receive pay, allowances, and other benefits as provided by law and regulation." D/D Form 4/1, C, 9(a)(5). Plaintiffs claim that recoupment constitutes a failure to provide the pay, allowances, and other benefits as provided by law and thus constitutes a breach of their enlistment or reenlistment contracts.

The duty to pay the servicemen their bonuses is not contractual, however, and the mere reference to the "entitlement to pay, allowances, and other benefits" in their enlistment and/or re-enlistment contracts does not transform it into a duty which, if violated, gives rise to contractual damages. *See United States v. Larionoff,*

---

**15.** MPAC did not have the authority to "reject" Secretary Korb's directions and thereby establish agency recoupment policy. *See* DoD Directive 5154.13 (Feb. 11, 1980). It was required to refer all "matters requiring personnel policy resolution" to the Assistant Secretary of Defense (MRA & L), who, at the time, was Lawrence Korb. *Id.* He was the only individual with the authority necessary to change the agency's recoupment policy. The Korb memo is in fact listed as one of the sources in the bibliography to the FMR's pay provisions. *See* DoD FMR Vol. 7A, Bibliography, B–10 (July 1996).

431 U.S. 864, 869, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977). It is well-established that "a soldier's entitlement to pay is dependent upon statutory right." *See Bell v. United States,* 366 U.S. 393, 401, 81 S.Ct. 1230, 6 L.Ed.2d 365. Count One, in short, fails to state a claim upon which relief can be granted. *See Wyatt v. United States,* 2 F.3d 398, 402 (Fed.Cir.1993). The appropriate way to evaluate the merits of plaintiffs' claim is by examining the statutory and regulatory provisions.

## II. Cross–Motions for Summary Judgment on Count Two

*Does DoD's Interpretation Violate Statutory Provisions?*

In Count Two plaintiffs contend that the recoupment statutes and regulations do not allow for recovery of their bonuses. Therefore, recoupment constitutes an illegal exaction, which is grounds for recovery under the Tucker Act. *See* 28 U.S.C. § 1491(a)(1) (1994 & Supp. V 1999); *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 605–606, 372 F.2d 1002 (1967).

Plaintiffs' first argument is that the agency's practice of recoupment is at odds with the clear meaning of the language of the recoupment statutes themselves. They contend that the failure of a service member to "complete the term of enlistment" has obvious reference to the administrative act of separation. In that context, the term "voluntarily" allegedly has a well-established meaning, namely, that the service member has applied for separation.[16] Under certain circumstances not applicable here, the member can indeed request separation and it is common to refer to requested separations as voluntary and non-requested separations as involuntary.

Plaintiffs also rely on the dictionary definition of voluntary: "in a voluntary manner, of one's own free will." Webster's Unabridged Dictionary at 2049 (1979). Pointing to the separations themselves, plaintiffs contend that they were clearly not separated "in a voluntary manner." They were never asked if they agreed to their discharges.

Plaintiffs' definition, however, and indeed their entire approach, begs the question, "Is *what* voluntary?" It is true that the administrative act of separation itself was not voluntary in any meaningful way. Indeed defendant has stipulated that it "involuntarily separated plaintiffs." The term "separation," however, is not used in the recoupment provisions.[17] The relevant phrase is, "complete the term of enlistment."[18] The actor in the case of separation is the agency; in the case of non-completion of the term of service, it is the service member. What the government contends is that, because the underlying

---

**16.** Plaintiffs also argue that the use of "misconduct" as an alternative ground for recoupment means that the term "voluntarily" cannot involve any "conduct." We disagree. Assuming that the actions and inactions of plaintiffs can be characterized as "conduct," it does not follow that the alternative grounds for recoupment are inconsistent. "Conduct," of necessity, is a broader concept than "misconduct," which, in any event has been given special meaning as grounds for separation. *See, e.g.,* DoD Directive 1332.14, Pt. 1, ¶ K.1 (a)(1)-(4) (listing the following as reasons for separation for misconduct: minor disciplinary infractions, a pattern of misconduct consisting of (a) discreditable involvement with civil or military authorities or (b) conduct prejudicial to good order and discipline, commission of a serious offense, or civilian conviction.).

**17.** This is what distinguishes the present case from those relied on by plaintiffs which deal with involuntariness in the narrow context of determining whether the court has jurisdiction, which depends in turn, on whether the cessation of pay, i.e. separation, was involuntary. *See, e.g., Canonica v. United States,* 41 Fed.Cl. 516 (1998); *West v. United States,* 35 Fed.Cl. 226 (1996); *McIntyre v. United States,* 30 Fed.Cl. 207 (1993).

**18.** Because we find the statutory language refers to the voluntariness of the underlying behavior and not the act of separation, we respectfully disagree with the court in *Iliff v. Schlessinger,* 539 F.2d 1275 (10th Cir.1976).

reasons prompting separation relate to acts of volition and because these actions were known by the service members to lead to separation, the early termination of the enlistment is also voluntary.[19]

Plaintiffs argue that the statutory language is plain on its face. We disagree. The statutory provisions do not make it clear whether only those who request separation voluntarily come to the end of their enlistment. No part of the phrase "voluntarily ... does not complete the term of enlistment" is defined in this context in the code itself. The language, in short, is susceptible of both parties' readings, and is thus ambiguous.

The DoD is given explicit authority to adopt interpretive regulations, and it has done so. An examination of those regulations would normally be the next step in applying the statutes. As explained above, however, by themselves the regulations are insufficient to understand the agency's interpretation. What has been offered by way of explanation in this case consists of directives relating to separation, memoranda relating to recoupment, DoD's financial regulations, and actual agency practice; all knit together by the affidavit of Col. Little. It is only by considering this package that one could discern the relevant unifying interpretation: DoD views a failure to meet weight and fitness standards, under most circumstances, as volitional, and separations resulting therefrom mean that the service members "voluntarily" failed to

complete their term of service. It is immaterial to this view that the service members did not request separation.

██ Determining whether this interpretation carries out the intent of the statute depends in part on whether the agency view is entitled to any deference. The court's guidelines in this respect are drawn from *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In general terms, if Congress has not spoken to the question at issue, and there is an "express delegation of authority to the agency to elucidate a specific provision of the statute by regulation," the court will defer to the agency's interpretation so long as it is not "arbitrary, capricious, or manifestly contrary to the statute." *Chevron U.S.A.*, 467 U.S. at 843–44, 104 S.Ct. 2778. We cannot disturb the Secretary's construction of the statute "if it reflects a plausible construction of the plain language of the statute and does not otherwise conflict with Congress' expressed intent." *Rust v. Sullivan*, 500 U.S. 173, 184, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991) (citing *Chevron U.S.A.*, 467 U.S. at 842–43, 104 S.Ct. 2778).

██ Although there has been an express delegation of authority here, the issue is clouded by the fact that the agency's interpretation is not artfully expressed. Indeed, one of the plaintiffs' arguments is that the interpretation offered in the affi-

---

**19.** We recognize, as will be discussed in connection with whether the agency violated its own regulations, that the agency used separation coding as the device to trigger recoupment. This confused the briefing, as did the government's quixotic insistence that the court should only be concerned with separation categories. Fortunately for the government, neither argument is inconsistent with the agency's interpretation of the term "voluntarily." The critical initial link in the agen-

cy's practice and explanation is that the failure of weight or physical fitness standards, rather than the separation, is seen as volitional. Only as a matter of administrative shorthand do the recoupment memoranda and regulations then classify certain separation codes as subject to recoupment, *but only because the agency has already determined that the action or inaction was volitional and known to lead to discharge.*

davits, which admittedly is consistent with practice, is inconsistent with the FMR.

The degree of deference to which less formal expressions of agency interpretation, such as administrative practice, are entitled was addressed recently by the Supreme Court in *United States v. Mead Corp.*, 121 S.Ct. 2164, 2168 (2001). The Court held that "administrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *Id.* at 2170–71. One of the indicia of entitlement to deference is the conclusiveness with which Congress has invested the agency with interpretive powers. *Id.* at 2172. In *Mead*, the Court found that the delegation to the United States Customs Service was less than conclusive, and thus its interpretive rulings were not entitled to the full weight of *Chevron* deference.[20] *Id.* at 2173–75.

The indicia that the agency's construction here is entitled to *Chevron* deference are considerably greater than in *Mead*. First, the delegation of interpretive regulatory authority here is explicit. Second, the Korb and Jehn memoranda are of considerably more gravitas than the approximately 10,000 annual individual letter rulings of Customs' 46 regional offices. Here, the Assistant Secretary was the delegee for announcing service-wide what DoD's interpretation of the recoupment statute would be. Korb's memorandum instantly bound all the services to a single practice. Although neither memoranda was subject to public notice and comment, that fact does not bar the application of

*Chevron. Mead*, at 2173; *see generally* 5 U.S.C. § 553(a)(2) (1994) (exceptions to the Administrative Procedure Act for matters "relating to agency management or personnel."); *cf. Hamlet*, 63 F.3d at 1105 (Fed.Cir.1995) (explaining that unpublished agency regulations can be entitled to the force and effect of law).

Moreover, the affidavits offered by defendant as evidence of agency practice are more than mere post-hoc rationalization. *See Parker v. OPM*, 974 F.2d 164, 166 (Fed.Cir.1992) (refusing to rely on affidavit produced for litigation as evidence of long-standing agency practice where there had been no official agency interpretation of the statute); *Felzien v. OPM*, 930 F.2d 898, 902–03 (1991) (refusing to grant deference to long-standing agency practice of ignoring regulation's language). The practice explained in the affidavits is consistent with the regulations and statutes governing recoupment and the agency's interpretation of them. Moreover, the agency's practice of recoupment for certain types of discharges irrespective of "application and interest" has not varied. This is a critical factor to consider in determining whether to assign weight to the agency's interpretation. *See Smiley v. Citibank*, 517 U.S. 735, 740, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996) ("To be sure, agency interpretations that are of long standing come before us with a certain credential of reasonableness, since it is rare that error would long persist."); *Rosete v. OPM*, 48 F.3d 514, 518–19 (1995) (deferring to agency's "consistent, long-standing regulatory interpretation of the statute so long as it is reasonable.").

DoD's construction is also not inconsistent with the small amount of legislative history on point. The first section of the

---

**20.** Customs' rulings were, however, potentially entitled to some deference under *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944), based on the agency's presumed special expertise. Slip op. at 15.

1951 Senate Report that accompanied the bill that amended the bonus statutes to provide for recoupment states as follows: [21]

> The Bureau of the Budget believes that a provision should be added to the bill which would provide for the recoupment of unearned bonus money when separation prior to completion of enlistment takes place if such separation is not due to *physical disability incurred in the line of duty* or otherwise occasioned by circumstances *beyond the control of the individual.*

*See* S.Rep. No. 82–935 (1951), *reprinted in* 1951 U.S.C.C.A.N. 2464, 2466. (emphasis added). The second section, entitled "Discussion of the Bill," uses different language to describe the circumstances for which recoupment would be appropriate. The section states:

> Another provision of the bill, not heretofore contained in law, permits the recovery of any part of unearned reenlistment bonuses paid where the persons serving in such reenlistment *voluntarily,* or *as a result of their own misconduct,* do not complete their term of enlistment. *This provision was added to the bill at the suggestion of the Bureau of the Budget.*

*Id.* at 2465 (emphasis added). The committee's acknowledgment that the provision was added at the suggestion of the Bureau of the Budget suggests that the committee meant to adopt the characterization of voluntariness in the Bureau of Budget's version, namely, that it refers to volitional behavior.

In sum, the agency's practice and its explanation of the rationale for that practice are fully consistent. *See Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 212–13, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). DoD's interpretation of the statutory provisions is thus entitled to substantial deference in determining the meaning of the recoupment statutes. An agency's interpretation of its own regulations must be upheld unless it is "plainly erroneous or inconsistent with the regulation." *Martin v. Occupational Safety & Health Review Comm'n,* 499 U.S. 144, 150–51, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991). To strike down DoD's interpretation in this circumstance would require us to hold as a matter of law, either that the agency had to treat failure to satisfy weight and fitness standards as non-volitional, or that it had to impose a requirement that the subsequent separation be at the service member's request. Neither holding is dictated by the statutory language or by reason. [22]

---

**21.** Plaintiffs argue that the version of the reenlistment bonus statute that was amended in 1951 is "substantially different" from the current reenlistment bonus provision, 37 U.S.C. §§ 308 and 308a. We do not discern any material difference. *Compare* Career Compensation Act of 1949, Pub.L.81–351, § 207, 63 Stat. 811 (Oct. 12, 1949), *with* 38 U.S.C. §§ 308 and 308a.

**22.** In construing an analogous code provision dealing with recoupment of education costs, the district court in *Hensala v. Department of the Air Force,* No. C00–01793 WHA, 2001 U.S. Dist. LEXIS 7398 (N.D.Cal. May 25, 2001), found that the circumstances surrounding a service member's failure to conceal his homosexuality was conduct calculated to lead to separation. *Id.* at *28. The court held that there was substantial evidence to support the service's decision that the member had thus "voluntarily ... fail[ed] to complete the period of active duty ..." as required in the recoupment statute at issue, 10 U.S.C. § 2005(a)(3). *Id. United States v. Gears,* 835 F.Supp. 1093, 1095 (N.D.Ind. 1993), dealing with the same statute, came to a different result. That case involved a midshipman who was discharged for, among other things, non-compliance with weight standards. Although the court appears to reject the government's broad reading of the term "voluntary," it specifically pointed to confusion about the physical standards applicable

The agency's contrary determinations are within the range of reasonable interpretations of ambiguous code provisions.[23]

*Did the Services Violate the Recoupment Regulation?*

A related but alternative argument plaintiffs make is that the services can only recoup from service members discharged for failure to meet weight or fitness standards under subdivision N of ¶ 090403 of the recoupment regulations, i.e., for the convenience of the government. Moreover, because this subdivision permits recoupment for service members "upon application and interest," and because none of the plaintiffs requested their separation, plaintiffs maintain that the FMR was violated. The practice, in short, was inconsistent with the literal wording of the regulations, according to plaintiffs. This is a legitimate alternative argument. *See Felzien,* 930 F.2d at 902–03.

According to defendant, the error in the argument lies in the incorrect assumption that DoD can only recoup from members who fail weight or physical fitness standards under subdivision N. It is undisputed that service members failing weight or fitness standards could be separated for reasons other than "convenience of the government." It was possible to discharge them for unsatisfactory performance, or, later, "weight control failure" or its equivalent. Defendant contends, therefore, that recoupment could occur so long as the service member was discharged for any one of the reasons listed in ¶ 090403. We agree.

With respect to discharges based on unsatisfactory performance, defendant's construction is telling. Each of the listed categories in ¶ 090403 is in the alternative. It is apparent that the references to "Overweight/obesity" or "lack of physical fitness" in subdivision N merely modify or are examples of circumstances in which the service may have discharged someone for its own convenience. They cannot reasonably be construed to bar recoupment when the separation is characterized in some other way.

As to weight control failure, which is not listed as its own separation category, defendant points out that the regulation is not limited to listed categories and that the FMR was, in any event, out of date. It had not been amended in light of the Jehn memo, which had created a separation category called weight control failure and had instructed the services to treat it as equivalent to drug rehabilitation failure for recoupment purposes. We agree with defendant. The Jehn memo is controlling,[24] and the FMR must be read in its light. This means that all the categories under which plaintiffs were separated-convenience of the government, weight control failure, and unsatisfactory performance-were covered by the recoupment regulation and thus available as grounds for recoupment.

to Gears and the absence of evidence that Gears knew that his particular weight would result in discharge where he met requirements for maximum percentage of fat. *Id.* at 1098–99.

**23.** *Accord Scott v. Lehman,* Slip Op. at 13–15 (D.S.C. June 23, 1987).

**24.** Similar to the Korb memo, the Jehn memo is entitled to the force and effect of law. *See Hamlet,* 63 F.3d at 1105. Assistant Secretary Jehn was acting pursuant to authority delegated to him by the Secretary of Defense when he issued the memorandum. *See* DoD Directive 5124.2 ¶ F.1 (Jan. 26, 1990). The Jehn memo appears to be substantive in that it provides the services with the right to recoup for "weight control failure" without any prerequisite that the service member request separation. Moreover, the language of the Jehn memo is mandatory and does not merely advise the services to take certain action.

██ Plaintiffs' remaining argument is that, with respect only to "convenience" terminations,[25] ¶ 090403 adds a requirement unique to recoupment, namely that the termination had to be the subject of the service member's application and interest. We disagree with plaintiffs' reading of subdivision N. Weight control failure and lack of physical fitness are among the reasons that one could be discharged for the convenience of the government. Invoking that ground for separation is not contingent upon the "application and interest" of the member. That is, however, a concept that applies to other types of "convenience of the government" separations, for example, surviving sons or daughters, early release to further education, or pregnancy or childbirth.[26]

As defendant points out, reading the "application and interest" language as applicable to plaintiffs here would be anomalous in that, during the time weight control failure was processed for separation under the "convenience of the government" rubric, it was not possible for service members to apply or express their interest to initiate such a separation. The "application and interest" language, in short, merely describes those circumstances where a service member can apply for separation under the category "for the convenience of the government." It was not intended to nor could it have imposed an additional element of a separation for convenience.

## CONCLUSION

The applicable statutory provisions and the FMR leave something to be desired in terms of clarity. Recoupment of plaintiffs' bonuses did not violate either, however. DoD's interpretation of the statutory provisions to permit recoupment when service members failed weight or physical fitness standards was reasonable. While the FMR recoupment provisions are dated, and, on their face, confusing, when read in light of current practice and the binding memoranda of the Assistant Secretaries of Defense, they become coherent. The FMR is not a violation of the statutory provisions nor did agency practice violate the FMR. Accordingly, defendant's motion to dismiss count I is granted; defendant's motion for summary judgment as to count II is granted; and plaintiffs' cross motion for summary judgment is denied. The Clerk is directed to enter judgment accordingly. Costs to each party.

---

**25.** These separations, insofar as they were predicated on weight control or physical fitness failure, stopped after the Jehn memo.

**26.** *See* Army Reg. 635–200, Ch. 5, Separation for Convenience of the Government, Section III, Surviving Sons or Daughters, ¶ 5–4 (26 June 1996); SECNAVIST 1910.4B, Enlisted Administrative Separations, Personnel Separations, Pt.1, Reasons for Separation, ¶ C, Convenience of the Government, Section 4(a), Early release to further education (29 May 1996); AFI 36–3208, Administrative Separation of Airmen, Ch.3, Voluntary Separation Prior to Expiration of Term of Service, Section B, Reasons for Voluntary Convenience of the Government (COG) Separation, ¶ 3.17, Pregnancy or Childbirth (14 Oct. 1994).