# United States Court of Appeals
# for the Federal Circuit

---

**LOGAN B. PRESTONBACK,**

*Plaintiff-Appellant*

**v.**

**UNITED STATES,**

*Defendant-Appellee*

---

2019-1166

---

Appeal from the United States Court of Federal Claims in No. 1:17-cv-00439-LAS, Senior Judge Loren A. Smith.

---

Decided: July 20, 2020

---

PETER CHARLES ROMBOLD, Hoover Law Firm, Junction City, KS, argued for plaintiff-appellant.

DANIEL S. HERZFELD, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by ETHAN P. DAVIS, ROBERT EDWARD KIRSCHMAN, JR., DOUGLAS K. MICKLE.

---

Before NEWMAN, REYNA, and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge.*

Logan B. Prestonback appeals the decision of the United States Court of Federal Claims upholding the Army Board for Correction of Military Records' denial of his request for waiver of the recoupment of his educational assistance debt by the United States Defense Finance and Accounting Service. Guided by this court's precedential decision in *Favreau v. United States*, 317 F.3d 1346 (Fed. Cir. 2002), we affirm the Court of Federal Claims' entry of judgment on the administrative record in favor of the Government.

BACKGROUND

I

In 2005, Mr. Prestonback was appointed as a cadet to the United States Military Academy (USMA) in West Point, New York. As a part of his commission, Mr. Prestonback signed a service agreement, USMA Form 5-50, wherein he agreed that "if [he] voluntarily fail[s], or because of misconduct fail[s], to complete the period of active duty . . . [he] will reimburse the United States" the proportional amount of his educational scholarship. J.A. 1056. Form 5-50 further specifies that "[t]he term 'voluntarily fail' includes, *but is not limited to*, failure to complete the period of active duty because of conscientious objection, because of resignation from the United States Military Academy or United States Army, and marriage while a cadet." *Id.* (emphasis added).

Form 5-50 derived from 10 U.S.C. § 2005 (2000), which allowed the Secretary to "require, as a condition to the Secretary providing advanced education assistance to any person, that such person enter into a written agreement with the Secretary." At the time Mr. Prestonback signed Form 5-50, § 2005 similarly required reimbursement if the person who entered into the written agreement

"voluntarily or because of misconduct, fail[ed] to complete the period of active duty."[1]  *Id.*

After graduating from West Point, Mr. Prestonback was commissioned as a Second Lieutenant on May 23, 2009—triggering the start of his active duty service obligation—and began his service in Fort Riley, Kansas. While there, he received a positive Officer Evaluation Report (OER) for the period between December 17, 2009 and July 20, 2010. Mr. Prestonback was then deployed to Iraq on November 4, 2010, where he was quickly promoted to First Lieutenant.

For the period between July 21, 2010 and May 9, 2011, Mr. Prestonback received his first negative OER, stating that he repeatedly "failed to follow direct lawful orders," "lack[ed] initiative," "failed to properly account for his platoon's property," and that he had "received no fewer than six written and multiple verbal counseling sessions directed to improve his performance." J.A. 1045–46. Mr. Prestonback acknowledged that these statements were correct in his response to the OER. For the period between May 18, 2011 and February 7, 2012, Mr. Prestonback received his second negative OER, this time stating that he "consistently under-performed." J.A. 1041–42. In another response, Mr. Prestonback acknowledged that his initial performance was inadequate but indicated his belief that his performance had improved. For the period between February 8, 2012 and February 7, 2013, Mr. Prestonback received his third negative OER, this time noting Mr. Prestonback's repeated failure of physical fitness tests and his failure to meet the Army's height and weight standards.

---

[1]     Effective January 6, 2006, § 2005 was amended to exclude the "voluntarily or because of misconduct, fails to" language.

On December 14, 2012, the Army Resources Command initiated Mr. Prestonback's elimination from the Army based on his first two negative OERs. Mr. Prestonback contended that his negative OERs were based on the officer's opinion of him rather than his performance, and that he was given more senior responsibilities without the corresponding promotions when he was underqualified to handle those responsibilities. On May 22, 2013, the Deputy Assistant Secretary of the Army determined that Mr. Prestonback should be involuntarily eliminated from the Army for substandard performance, and that a recoupment action for the proportional amount of his educational scholarship would be conducted. On June 27, 2013, the Army discharged Mr. Prestonback.

On September 13, 2013, the United States Defense Finance and Accounting Service (DFAS) notified Mr. Prestonback that he owed $30,352.01 in recoupment, an amount proportional to the uncompleted time remaining on his service agreement. On October 21, 2013, Mr. Prestonback filed an Application for Correction of Military Record with the Army Board for Correction of Military Records, arguing that the recoupment action was improper because he was eliminated involuntarily, and Form 5-50 only requires recoupment for voluntary action or misconduct. On February 5, 2015, the Board denied Mr. Prestonback's application for correction, reasoning that "[h]e breached his contract agreement by being eliminated for substandard performance," and so his "breach was considered voluntary." J.A. 1003, 1008.

II

Mr. Prestonback filed a complaint in the Court of Federal Claims pursuant to the Tucker Act, arguing that he should not have to pay recoupment because his Form 5-50 agreement with the Government was governed by contract principles, and he neither voluntarily resigned nor was he terminated for misconduct.

The Court of Federal Claims granted the Government's motion for judgment on the administrative record. The court held "that the Board reasonably concluded that [Mr. Prestonback's] involuntary termination for substandard performance fell within the terms of Form 5-50" because his "referred OERs could reasonably be interpreted as a voluntary failure to fulfill the terms of his service requirement in violation of Form 5-50, which in turn triggered an involuntary separation ripe for recoupment actions." *Prestonback v. United States*, 139 Fed. Cl. 380, 385 (2018). The trial court reasoned that "[p]recedent dictates that agreements memorialized by documents such as Form 5-50, which entitle service members to compensation, rest upon a statutory right, and therefore should not be analyzed according to common law contract principles." *Id.* at 384. The trial court rejected Mr. Prestonback's argument that "financial recoupment was proper only in the event of his willful resignation or engagement of misconduct." *Id.* Citing this court's decision in *Favreau*, 317 F.3d at 1360, the trial court reasoned that "'voluntarily failed' can extend to actions other than a soldier's willful resignation from the military." *Prestonback*, 139 Fed. Cl. at 384. It further explained that because Form 5-50 states that "the term 'voluntarily fail' includes, *but is not limited to*" certain actions, the listed actions are not exhaustive and include substandard performance resulting in involuntary separation. *Id.* at 384–85 (emphasis added).

Mr. Prestonback appeals to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

Mr. Prestonback raises two issues on appeal: (1) whether the Form 5-50 agreement rests on a statutory right or presents a question of government contracts; and (2) whether the Court of Federal Claims erred in concluding that Mr. Prestonback's substandard performance resulting in an involuntary separation constituted a

voluntary failure as set forth in 10 U.S.C. § 2005.  Because we agree with the trial court's interpretation of § 2005, we affirm its decision entering judgment on the administrative record.

I

We find this case similar to *Favreau*, 317 F.3d 1346.  In *Favreau*, former members of the armed services brought a class action suit against the United States for recouping previously dispersed bonus payments after their separation from the Army.  *Id.* at 1348.  Mr. Favreau, in particular, "was separated from the Army for failure to comply with weight control standards," after which the "Army recouped the unearned portion of his reenlistment bonus." *Id.* at 1349.  None of the *Favreau* plaintiffs were voluntarily separated from the Army.  *Id.* at 1350.

During the relevant timeframe, two provisions of the U.S. Code governed recoupment of bonus payments— 37 U.S.C. §§ 308(d)(1) (1994) and 308a(b) (1994).[2] *Favreau*, 317 F.3d at 1351.  These sections stated, in pertinent part, that "[a] member who voluntarily, or because of his misconduct, does not complete the term of enlistment for which a bonus was paid to him under this section . . . shall refund that percentage of the bonus," § 308(d)(1) (1994), and that "a person who voluntarily, or because of his misconduct, does not complete the term of enlistment for which a bonus was paid to him under this section . . . shall refund that percentage of the bonus," § 308a(b) (1994).  This statutory language is strikingly similar to the provision at issue in this case.

---

[2]    Effective October 1, 2000, 37 U.S.C. § 308a was repealed by amendments made to subsection (b) of 37 U.S.C. § 309, and, effective January 6, 2006, 37 U.S.C. § 308(d)(1) was rewritten into 37 U.S.C. § 308(d), which removed the "voluntary, or because of his misconduct" language.

Defending its recoupment action, the Government in *Favreau* provided an affidavit that provided the Department of Defense's interpretation of the term "voluntarily." 317 F.3d at 1352. The Department of Defense explained that the question of "whether an individual has failed to complete a term of enlistment 'voluntarily' depends on whether the service-member was separated for engaging in conduct that is within the control of the service-member but incompatible with military service." *Id.* Continuing, it noted that recoupment is not limited "to separations granted at the request of the service-member; rather, even where the military service initiates the separation, we have concluded that recoupment is appropriate if the conduct that resulted in the separation was voluntary, i.e., within the service-member's control." *Id.*

DFAS also promulgated recoupment regulations that provided a list of actions that constituted failing to complete one's service term "voluntarily or because of misconduct." *Id.* at 1354. That list did not include the category "weight control failure." *See id.* at 1354–55. The regulations did, however, include in the preamble the non-limiting language "but is not limited to" and further included non-limiting examples such as "[t]ransfer to Fleet Reserve, Fleet Marine Corps Reserve, or the Army or Air Force Reserve," "[m]arriage—female member," "[r]esignation-separation by reason of acceptance of member's resignation," and "for the convenience of the government." *Id.*

Mr. Favreau first claimed that the recoupment violated his re-enlistment contract, which stated that he would be "[e]ntitled to receive pay, allowances, and other benefits as provided by law and regulation." *Id.* at 1356. This court rejected his contract claim, reasoning that the "duty to pay the servicemen their bonuses is not contractual." *Id.* Rather, we explained that it "is well-established that 'a soldier's entitlement to pay is dependent upon statutory right.'" *Id.* at 1357 (quoting *Bell v. United States*, 366 U.S. 393, 401 (1961)).

Mr. Favreau next alleged that the recoupment of his bonus violated provisions of 37 U.S.C. §§ 308(d)(1) and 308a(b). *Id.* Particularly, Mr. Favreau argued that he did not "voluntarily" separate from the Army because he did not apply for separation. *Id.* Citing a dictionary definition of "voluntary," Mr. Favreau urged that it required his separation to be "in a voluntary manner, of one's own free will." *Id.* (quoting WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY (UNABRIDGED), at 2049 (2d ed. 1979)). This court, however, asked the question: "Is *what* voluntary?" *Id.* Indeed, it was undisputed that the administrative act of separation was not voluntary. *Id.* Rather, we explained that because the term "separated" was not used in the governing recoupment statute, the question was whether the non-completion of the term of service was voluntary. *Id.* Particularly, we determined that the term "voluntary" modifies the term "complete the term of enlistment." *Id.* We elaborated that the actor in the case of a separation is the agency, while the actor in the case of non-completion of the term of service is the service member. *Id.* We nonetheless concluded that the statutory language was ambiguous because it does "not make it clear whether only those who request separation voluntarily come to the end of their enlistment." *Id.* at 1358. We held, however, that the Department of Defense's interpretation of "voluntarily, or because of his misconduct, does not complete the term of enlistment" to include the failure to satisfy weight and fitness standards was entitled to substantial deference. *Id.* at 1358–61.

## II

With this background in mind, we first consider Mr. Prestonback's challenge to the Board's treatment of this case as one governed by statutory principles, rather than government contracts law. We review a decision of the Court of Federal Claims granting or denying a motion for judgment on the administrative record de novo, applying the same standard of review as the trial court. *Palantir*

*USG, Inc. v. United States*, 904 F.3d 980, 989 (Fed. Cir. 2018) (citing *Glenn Def. Marine (Asia), PTE Ltd. v. United States*, 720 F.3d 901, 907 (Fed. Cir. 2013)). Accordingly, we will not disturb the decision of the Board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence. *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005) (citing *Haselrig v. United States*, 333 F.3d 1354, 1355 (Fed. Cir. 2003)).

The Court of Federal Claims appropriately determined that Mr. Prestonback's agreement with the Army, memorialized through Form 5-50, rests upon a statutory right. As this court has previously recognized, the Supreme Court has ruled that military pay and benefit entitlements are controlled by statute, not contract. *Schism v. United States*, 316 F.3d 1259, 1271 (Fed. Cir. 2002) (en banc) (citing *Bell*, 366 U.S. at 401). "It is well-established that 'a soldier's entitlement to pay is dependent upon statutory right.'" *Favreau*, 317 F.3d at 1357 (quoting *Bell*, 366 U.S. at 401). As in *Favreau*, where we determined that the "duty to pay the servicemen their bonuses is not contractual," *id.* at 1356, here, the duty to provide tuition assistance is not contractual. The fact that there exists a contract regarding entitlement to pay, allowances, and other benefits "does not transform it into a duty which, if violated, gives rise to contractual damages." *Id.* (citing *United States v. Larionoff*, 431 U.S. 864, 869 (1977)). Moreover, Form 5-50 derived from a statute that allowed the Secretary to "require, as a condition to the Secretary providing advanced education assistance to any person, that such person enter into a written agreement with the Secretary." 10 U.S.C. § 2005(a) (2000). Because tuition assistance is encapsulated by military pay and benefit entitlements, the Board properly treated Mr. Prestonback's case as one governed by statutory principles.

### III

We next consider Mr. Prestonback's contention that he did not "voluntarily fail[]" to complete his full term because an "involuntary elimination is not a voluntary elimination." Appellant's Br. 15–16. Once again, we find *Favreau* instructive. The statute at issue here uses ambiguous language nearly mirroring the statutory provisions at issue in *Favreau*. *Compare* 10 U.S.C. § 2005(a)(3) (2000) ("[T]hat if such person, voluntarily or because of misconduct, fails to complete the period of active duty . . . such person will reimburse"), *with* 37 U.S.C. § 308a(b) (1994) ("a person who voluntarily, or because of his misconduct, does not complete the term of enlistment . . . shall refund"). Indeed, Mr. Prestonback's counsel conceded at oral argument that the statutory language at issue in this case and in *Favreau* is nearly identical. *See* Oral Arg. at 10:54–11:05, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=19-1166.mp3. And the *Favreau* court even cited to § 2005, recognizing the similarity between it and the statutory provision at issue in *Favreau*. *See* 317 F.3d at 1360 n.22.

Moreover, as was the case in *Favreau*, Form 5-50 defines the term "voluntarily" to include but not be limited to certain actions, such as conscientious objection, resignation, and marrying while a cadet. *Compare* J.A. 1056, *with Favreau*, 317 F.3d at 1354–55. Also as it did in *Favreau*, the Government interpreted "voluntarily . . . fail[s]" to encompass volitional actions of a service member, such as substandard performance. J.A. 1008. This interpretation, like the Government's interpretation of the statute at issue in *Favreau*, is "within the range of reasonable interpretations of ambiguous code provisions." *Favreau*, 317 F.3d. at 1361. It is reasonable to conclude that a voluntary failure to complete active duty service as an officer (or a term of enlistment as in *Favreau*) can broadly refer to a service member's voluntary actions triggering the service member's separation. Thus, as in *Favreau*, the Government's

reasonable interpretation of the recoupment statute should be afforded deference.[3]

Mr. Prestonback asserts that "his involuntary termination from the Army was logically the opposite of a voluntary termination, and that therefore recoupment was not authorized by his contract." Appellant's Br. 13. He continues that because the plain meaning of the term "voluntary" is clear, his elimination cannot be both voluntary and involuntary. *Id.* at 15–16. Yet, as we explained in *Favreau*, the question is not whether the administrative act of Mr. Prestonback's elimination from the Army was voluntary. *See* 317 F.3d at 1357. Rather, the question is whether his failure to complete the period of active duty was voluntary. *See id.* Accordingly, much as we determined that Mr. Favreau voluntarily did not complete his term of enlistment for failing to meet physical standards, *id.* at 1349, 1357, we conclude that Mr. Prestonback voluntarily failed to complete his period of active duty for substandard performance.

The Army's treatment of "conscientious objection"— listed in Form 5-50 as an example of voluntary failure by the service member—as grounds for an involuntary elimination in certain circumstances supports our view that a voluntary failure to serve should not be limited to a voluntary elimination. At least as of December 2009, a cadet who applies for discharge on the grounds of conscientious objection "will be permitted to resign or will be involuntarily separated from the Military Academy" where that cadet's application for discharge "is disapproved or the cadet is reclassified." United States Military Academy, Army

---

[3]    Here, the level of deference we afford to the Government is *Skidmore* deference, which is afforded to less formal expressions of agency interpretation. *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *see also United States v. Mead Corp.*, 533 U.S. 218, 227–28 (2001).

Regulation 210-26, ¶ 6-21 (2009).  This interpretation further demonstrates the juxtaposition between a voluntary failure to complete the period of active duty and the administrative act of involuntary elimination.

For these reasons, we conclude that the Court of Federal Claims correctly concluded that Mr. Prestonback voluntarily failed to fulfill the terms of his service requirement.

## CONCLUSION

We have considered Mr. Prestonback's remaining arguments, but we do not find them persuasive.  For the foregoing reasons, we affirm the decision of the Court of Federal Claims entering judgment on the administrative record.

**AFFIRMED**

### COSTS

No costs.