Tanya L. TOWNE, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 11–742C.

United States Court of Federal Claims.

Oct. 25, 2012.

---

706

Scott W. MacKay, Gaithersburg, Md., for plaintiff.

Ryan M. Majerus, Trial Attorney, Reginald T. Blades, Jr., Assistant Director,

Jeanne E. Davidson, Director, Commercial Litigation Branch, Civil Division, Stuart F. Delery, Acting Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant. Major Elizabeth Walker, U.S. Army Litigation Division, Department of the Army, Fort Belvoir, Va., of counsel.

### OPINION AND ORDER

GEORGE W. MILLER, Judge.

On November 4, 2011, plaintiff, Tanya L. Towne, filed a complaint (docket entry 1) seeking payment of enhanced military disability severance benefits pursuant to 10 U.S.C. § 1212(c)(1)(A). Thereafter, the parties filed cross-motions for judgment on the administrative record (docket entry 8, March 5, 2012; docket entry 11, April 1, 2012), as well as corresponding responses and replies (docket entry 14, May 11, 2012; docket entry 15, May 21, 2012). The underlying facts are drawn from the administrative record and are not in dispute. For the reasons set forth below, the Court defers decision on the parties' motions and **REMANDS** the case to the Army Board for Correction of Military Records ("ABCMR") for further consideration.

## I. Background

### A. Plaintiff's Service and Injury

Plaintiff began her military service when she enlisted in the New York Army National Guard on March 17, 1993. Admin. R. ("AR") Part 7, at 330. Plaintiff injured her back in the line of duty while lifting and moving a computer on August 17, 2000. AR Part 1, at 4; AR Part 6, at 252–54. On June 4, 2004, plaintiff suffered another back injury when she fell in full body armor through a window to the floor approximately eight feet below during a building-clearing exercise as training for active duty service in Operation Iraqi Freedom. AR Part 1, at 5; AR Part 2, at 80; AR Part 3, at 99, 142; AR Part 6, at 275. The training took place in Fort Drum, New York. AR Part 1, at 5; AR Part 2, at 80; AR Part 3, at 99, 142. Plaintiff subsequently deployed to Iraq and Kuwait for ten months in 2005. AR Part 1, at 5. During that time, she was required to wear body armor, which

aggravated her back pain. AR Part 1, at 5; AR Part 2, at 75. Effective July 16, 2009, plaintiff was honorably discharged from the National Guard. AR Part 1, at 37; AR Part 2, at 71.

### B. Calculation of Military Disability Severance Pay

Certain disabled former members of the armed forces are entitled to severance pay after they are discharged from service. 10 U.S.C. § 1203. *See generally id.* §§ 1201–1222. In general, a disabled service member's severance pay is determined by multiplying twice the member's monthly pay by the number of years of the member's service. *Id.* § 1212(a). The Wounded Warrior Act (the "WWA"), which became Title XVI of the National Defense Authorization Act of 2008 (the "NDAA 2008"), amended § 1212 by adding the current subsection (c). National Defense Authorization Act for Fiscal Year 2008, Pub.L. No. 110–181, § 1646(a), 122 Stat. 3, 472 (2008). The resulting law ensures that disabled service members qualify for certain minimum severance payments, even if their service time would otherwise have been insufficient to qualify them for those payments under the general formula. 10 U.S.C. § 1212(c). All service members are now credited with at least three years of service for the purpose of calculating disability severance payments. § 1212(c)(1)(B). Additionally, service members whose disability was either incurred "in line of duty in a combat zone . . . or incurred during the performance of duty in *combat-related operations as designated by the Secretary of Defense*" (the "Secretary" or the "DoD") are credited with at least six years of service time. § 1212(c)(1)(A) (emphasis added).

The Under Secretary of Defense for Personnel and Readiness issued a Directive–Type Memorandum (the "DTM") on March 13, 2008 that, *inter alia*, defined the phrase "incurred during performance of duty in combat-related operations" in § 1212(c)(1)(A). David S.C. Chu, Office of the Under Sec'y of Def. for Pers. and Readiness, *Revised and New Policies to Implement the National Defense Authorization Act (NDAA) for Fiscal Year 2008*, at 4

(2008). The DTM amended Department of Defense Instruction ("DoDI") 1332.38 to add that "determination of 'incurred during performance of duty in combat-related operations' shall be made consistent with criteria set forth in paragraph E3.P5.1.2." *Id.* Paragraph E3.P5.1.2 reads:

> E3.P5.1.2. *Armed conflict (5 U.S.C. 3502, 5532, 6303(Reference (c)))*. The physical disability is a disease or injury incurred in the line of duty as a direct result of armed conflict. The fact that a member may have incurred a disability during a period of war or in an area of armed conflict, or while participating in combat operations is not sufficient to support this finding. There must be a definite causal relationship between the armed conflict and the resulting unfitting disability.
>
> > E3.P5.1.2.1. Armed conflict includes a war, expedition, occupation of an area or territory, battle, skirmish, raid, invasion, rebellion, insurrection, guerrilla action, riot, or any other action in which Service members are engaged with a hostile or belligerent nation, faction, force, or terrorists.
> >
> > E3.P5.1.2.2. Armed conflict may also include such situations as incidents involving a member while interned as a prisoner of war or while detained against his or her will in custody of a hostile or belligerent force or while escaping or attempting to escape from such confinement, prisoner of war, or detained status.

Department of Defense, Instruction No. 1332.38, at 35 (1996). Paragraph E3.P5.1.2 of DoDI 1332.38 had previously interpreted the statutory language "as a direct result of armed conflict." Because the DTM relies on paragraph E3.P5.1.2 to also interpret "combat-related operations," the DTM effectively defines "in combat-related operations" to mean "as a direct result of armed conflict."

### C. Procedural History

After plaintiff returned from Iraq, she was referred to an informal Physical Evaluation Board ("PEB") that reviewed her back injury, found her unfit for service, and made several findings related to her disability sev-

erance benefits. AR Part 2, at 87–88. Blocks 10(C) and 10(D) of the PEB's report included the following recommended findings:

> C. DISABILITY DID RESULT FROM A COMBAT RELATED INJURY AS DEFINED IN 26 USC 104 AND FOR PURPOSES OF 10 USC 10216(G).[1]

> D. DISABILITY WAS NOT INCURRED IN A COMBAT ZONE OR INCURRED DURING THE PERFORMANCE OF DUTY IN COMBAT–RELATED OPERATIONS AS DESIGNATED BY THE SECRETARY OF DEFENSE (NDAA 2008[§ ] 1646).[2]

AR Part 2, at 76. The Army Physical Disability Agency ("APDA") adopted the PEB's findings. AR Part 1, at 37; AR Part 2, at 71. Adhering to the PEB's finding in Block 10(D) of its report, the APDA did not credit plaintiff with the six years of service time § 1212(c)(1)(A) would otherwise have allowed.[3] The APDA instead credited plaintiff with only her actual service time of four years, eight months, and nine days. AR Part 1, at 37; AR Part 2, at 71. Based on the PEB's finding in Block 10(C) of its report, however, the APDA agreed that plaintiff's disability resulted from a combat-related injury for purposes of 26 U.S.C. § 104. Plaintiff's counsel contacted the APDA to request that the APDA reconcile its determinations that plaintiff's injury was a combat-related injury but that it did not occur during combat-related operations. AR Part 2, at 66–69. The APDA responded that the DoD's definition of "combat-related operations" was different from the definition of "combat-related injury," and thus the APDA declined to modify the PEB's findings. AR Part 2, at 66–69.

On January 6, 2011, plaintiff filed an application with the ABCMR. AR Part 1, at 10. Plaintiff argued, as she does here, that the DTM is invalid because it conflicts with Congress's intended meaning of "combat-related operations" in the WWA and the NDAA 2008 as it interprets "combat-related operations" in § 1212(c)(1)(A) more narrowly than Congress intended by excluding conditions simulating war. Therefore, plaintiff argued, she should be credited with six years of service for purposes of calculating her disability severance pay. See AR Part 1, at 12–25. The ABCMR denied plaintiff's application on October 4, 2011. AR Part 1, at 1–9. In its decision, the ABCMR applied the DTM without responding to plaintiff's argument that the DTM is contrary to the statute it purports to interpret. AR Part 1, at 8–9.

### D. Present Action

Following denial of her ABCMR application, plaintiff filed her complaint (docket entry 1, November 4, 2011) in this court. The complaint recites the facts described above and argues, as plaintiff did before the ABCMR, that Congress intended the DoD's interpretation of "combat-related operations" to include training under conditions simulating war. Plaintiff cites as evidence of Congress's intent (a) definitions of other phrases in the WWA, elsewhere in the NDAA 2008, and in other statutes that include the term "combat-related"; (b) the need to avoid an interpretation that renders the "combat-related operations" prong of § 1212(c)(1)(A) superfluous; (c) the need to avoid an interpretation of "combat-related" that renders meaningless the word "related"; and (d) legislative history of the WWA. Pl.'s Resp. in Opp'n to Def.'s Mot. for J. on the AR and Pl.'s Cross Mot. for J. on the AR ("Pl.'s

---

1. The PEB's finding that plaintiff's injury was combat-related allowed plaintiff to exclude her disability severance payments from gross income for tax purposes. See 26 U.S.C. § 104(a)(4), (b)(2)(C). While not relevant to this case, this finding also would allow the reserve services to retain, as non-dual service status technicians, military technicians who lose dual status due to combat-related disability. See 10 U.S.C. § 10216(g).

2. "NDAA 2008 § 1646" refers to the section of the WWA in which Congress amended 10 U.S.C.

§ 1212 to add the current subsection (c), which contains the "combat-related operations" language that is in dispute in this case. See § 1212(c)(1)(A).

3. Plaintiff remained eligible for severance pay based on the three-year minimum provided by 10 U.S.C. § 1212(c)(1)(B). That provision did not provide plaintiff any additional benefit, however, because plaintiff's actual service time was greater than three years.

Mot.") 17–32. Plaintiff points specifically to 10 U.S.C. § 1413a(e) and 26 U.S.C. § 104(b)(3), in which Congress defined "combat-related disability" and "combat-related injury," respectively. In both cases, Congress specified that injuries sustained under "conditions simulating war" are within the scope of the definitions.[4] § 1413a(e)(2)(C); § 104(b)(3)(A)(iii). Likewise, in paragraph E3.P5.2.2 of DoDI 1332.38 relating to tax benefits under 26 U.S.C. § 104, the DoD defines "combat-related" to include disabilities resulting "[u]nder conditions simulating war." As relief, plaintiff requests the additional disability severance pay she would have received upon a determination that her disability occurred during the performance of duty in combat-related operations. *See* 10 U.S.C. § 1212(c)(1)(A).

Defendant filed a motion for judgment on the administrative record ("Def.'s Mot.") pursuant to Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC"). For each piece of evidence plaintiff cites, defendant argues that such evidence is not dispositive of Congress's intent. In short, defendant argues that none of plaintiff's evidence is sufficient to demonstrate Congress's intent, and therefore the definition of "combat-related operations" is "entirely up to the discretion of the Secretary of Defense." Def.'s Mot. 13, 15. Plaintiff responded by filing a cross-motion for judgment on the administrative record. *See* Pl.'s Mot.

## II. Discussion

### A. *The Court Has Jurisdiction Over Plaintiff's Claim*

■ The Court has jurisdiction over plaintiff's claim pursuant to the Tucker Act. *See* 28 U.S.C. § 1491. The Tucker Act grants the Court jurisdiction over claims arising out of "any Act of Congress or any regulation of an executive department," *id.,* if

that act or regulation " 'can fairly be interpreted as mandating compensation by the Federal Government.' " *United States v. Navajo Nation,* 556 U.S. 287, 290, 129 S.Ct. 1547, 173 L.Ed.2d 429 (2009) (quoting *United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)). 10 U.S.C. § 1203 mandates compensation by the Federal Government to qualifying service members in the form of disability severance pay. *Verbeck v. United States,* 89 Fed.Cl. 47, 61 (2009) ("[S]ection 1203 is a money-mandating statute for the same reasons that Section 1201 is a money-mandating source of law for purposes of jurisdiction of this court."); *cf. McHenry v. United States,* 367 F.3d 1370, 1376 (Fed.Cir.2004) (finding Court of Federal Claims jurisdiction over claims under a related statute, 10 U.S.C. § 1201, for retirement pay compensation).

### B. *The Court Remands Plaintiff's Case to the ABCMR for Further Consideration*

■ The Court decides a motion for judgment on the administrative record as though it is conducting an "expedited trial on the record." *Meidl v. United States,* 100 Fed.Cl. 1, 5 (2011) (citing *Bannum, Inc. v. United States,* 404 F.3d 1346, 1356 (Fed.Cir. 2005)). The Court will grant a motion under RCFC 52.1 only if "a party has met its burden of proof based on the evidence in the record." *Peterson v. United States,* 104 Fed. Cl. 196, 204 (2012).

■ Plaintiff requests that the Court set aside the decision of the ABCMR. The Court reviews a decision of a military board "to determine whether it is arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Lewis v. United States,* 458 F.3d 1372, 1376 (Fed.Cir.2006); *see also Chappell v. Wallace,* 462 U.S. 296, 303, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). The stan-

---

**4.** Congress has referenced repeatedly the definition of "combat-related disabilities" set forth in § 1413a(e), namely, in 5 U.S.C. § 6333(b)(2)(C)(i) (exemption of members who have sustained a combat-related disability from exhaustion of annual and sick leave before using transferred leave); 10 U.S.C. §§ 1074i(d)(3) (travel expense reimbursement for care of combat-related disabilities), 1175a(h)(2)(B) (no re-

duction in combat-related disability pay due to receipt of additional voluntary separation benefits), 1414(d)(1) (retirement pay cannot be combined with combat-related disability pay), 10216(g)(1) (retaining certain former dual-status military technicians with combat-related disabilities); and 37 U.S.C. § 303a(e)(3)(E) (entitlement of members with combat-related injuries to previously earned or paid special pay).

dard is deferential, but it requires the agency to meet minimum standards of both reasoned decisionmaking and conformity to the statute. *Allentown Mack Sales & Serv., Inc. v. NLRB,* 522 U.S. 359, 374, 118 S.Ct. 818, 139 L.Ed.2d 797 (1998); *see also Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 52, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).

### 1. *Defendant Has Not Established That the DTM Was the Result of "Reasoned Decisionmaking"*

■ To satisfy the "reasoned decisionmaking" requirement, an agency interpreting a statute must "have articulated the reasons for [its] decision." *In re Sang–Su Lee,* 277 F.3d 1338, 1342 (Fed.Cir.2002). This requirement ensures that the agency's process is "logical and rational." *Allentown,* 522 U.S. at 374, 118 S.Ct. 818.

■ The DoD articulated no reason for its choice to define "incurred during the performance of duty in combat-related operations" to mean the same as "received in line of duty as a direct result of armed conflict." Likewise, the DoD provided no reason for its deviation from other statutory and regulatory definitions (*see supra* note 4 and accompanying text) of language that includes the term "combat-related." Furthermore, the DTM—like the decisions of the PEB, the APDA, and the ABCMR—lacks any explanation for the DoD's interpretation. Given this omission, the Court cannot at this time find that defendant has met its burden, however low, of showing that the DTM was not an arbitrary or capricious interpretation of 10 U.S.C. § 1212(c)(1)(A). *See FCC v. Fox Television Stations, Inc.,* 556 U.S. 502, 549, 129 S.Ct. 1800, 173 L.Ed.2d 738 (2009) ("*'Unexplained* inconsistency is' a 'reason for holding an interpretation to be an arbitrary and capricious change from agency practice.'" (quoting *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.,* 545 U.S. 967, 981, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005))); *Frizelle v. Slater,* 111 F.3d 172, 177–78 (D.C.Cir.1997) (holding a Coast Guard board's deviation from policy to be arbitrary where the board gave no explanation for the deviation); *Verbeck v. United States,* 97 Fed.

Cl. 443, 459 (2011) ("Even the narrow judicial review this court exercises over the Board's decisions compels the court to vacate a decision that 'fail[s] to address a potentially meritorious argument raised by [a] plaintiff.'" (quoting *Roberts v. Harvey,* 441 F.Supp.2d 111, 121 (D.D.C.2006))).

In other cases where courts have been required to evaluate an agency interpretation without the agency's explanation in the record, the courts have remanded the matter to the agency for additional explanation or investigation. *See, e.g., Negusie v. Holder,* 555 U.S. 511, 517, 129 S.Ct. 1159, 173 L.Ed.2d 20 (2009) ("When the [agency] has not spoken on a matter that statutes place primarily in agency hands, our ordinary rule is to remand to give the [agency] the opportunity to address the matter in the first instance in light of its own expertise." (internal punctuation and citation omitted)); *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985) ("[I]f the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."); *FTC v. Sperry & Hutchinson Co.,* 405 U.S. 233, 249, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972) ("[T]he process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained." (citations omitted)); *SEC v. Chenery Corp.,* 318 U.S. 80, 94, 63 S.Ct. 454, 87 L.Ed. 626 (1943) ("[C]ourts cannot exercise their duty of review unless they are advised of the considerations underlying the action under review."); *Walls v. United States,* 582 F.3d 1358, 1368 (Fed.Cir. 2009) (remanding a personnel decision to the military board to act on a completed record); *Nutech Laundry & Textile, Inc. v. United States,* 56 Fed.Cl. 588, 593 (2003) ("Where the court finds that the agency does not provide an adequate basis for review, the court should not conduct a *de novo* review but should remand the matter for further agency consideration."). The Court is authorized to "remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just." 28 U.S.C. § 1491(a)(2); *accord*

RCFC 52.2(a); *see also Hale v. United States*, No. 10–822C, 2011 WL 2268961, *1–2 (Fed.Cl. June 9, 2011) (remanding a military disability benefits claim to the ABCMR).

### 2. The ABCMR Shall Provide DoD With an Opportunity to Explain Its Interpretation of 10 U.S.C. § 1212(c)(1)(A)

Plaintiff argues that the DTM is invalid because Congress intended that the DoD interpret "combat-related operations" to include the combat training in which she sustained her injury, and therefore the ABCMR's decision was contrary to law. Assuming the DTM was not issued arbitrarily or capriciously, the Court would utilize the *Chevron* framework to interpret § 1212(c)(1)(A) and the DTM. *Favreau v. United States*, 317 F.3d 1346, 1358–59 (Fed. Cir.2002) (analyzing a DoD interpretation under *Chevron* where the interpretation was the result of a service-wide memo and the statute explicitly delegated interpretive authority to the DoD); *see Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *Chevron* requires a two-step analysis of agency interpretations of statutes. *Chevron*, 467 U.S. at 842–43, 104 S.Ct. 2778. If Congress has unambiguously spoken to the question at issue, the Court interprets the statute according to Congress's expressed intent. *Id.* If Congress has not spoken to the question at issue, but has instead given an "express delegation of authority to the agency to elucidate a specific provision of the statute by regulation," the Court defers to the agency's interpretation so long as it is not "arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 843–44, 104 S.Ct. 2778.[5]

The parties express very different views about the range of permissible interpretation of § 1212(c)(1)(A). Plaintiff argues that, while Congress intended that the DoD determine which specific operations are "combat-related," Congress also intended the phrase

"combat-related operations" to encompass conditions simulating war, including the training during which plaintiff was injured. Pl.'s Mot. 15–34. Defendant argues that Congress did not express any intent to limit the Secretary's authority to define "combat-related operations," and therefore the definition is "entirely up to the discretion of the Secretary of Defense." Def.'s Mot. 13.

#### a. Congress Did Not Give "Complete Discretion" to the DoD to Interpret § 1212(c)(1)(A)

 The Court does not defer to agency interpretations that are arbitrary, capricious, or based on impermissible constructions of statutes. *Mayo*, 131 S.Ct. at 711–12 (citing *Chevron*, 467 U.S. at 843, 104 S.Ct. 2778). In particular, the Court does not defer to agency interpretations that are contrary to Congress's expressed intent. *Cuomo v. Clearing House Ass'n*, 557 U.S. 519, 525, 129 S.Ct. 2710, 174 L.Ed.2d 464 (2009) ("But the presence of some uncertainty does not expand *Chevron* deference to cover virtually any interpretation ...."); *see also PGBA, LLC v. United States*, 57 Fed.Cl. 655, 660 (2003) ("To say that this court must defer to agency discretion, however, is not to say that a particular finding is totally committed to that discretion, so as to make it unreviewable."). Defendant's assertion that Congress gave the DoD complete discretion to define "combat-related operations" would only be plausible if Congress had expressed no intent other than to grant such discretion. *E.g., Webster v. Doe*, 486 U.S. 592, 599–602, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988) (holding CIA Director's decision to terminate employee not subject to Administrative Procedure Act review where statute authorized Director, "in his discretion," to terminate agency employees "whenever he shall *deem* such termination necessary or advisable in the interests of the United States").

 Here, however, Congress did not give discretion to the DoD to determine uni-

---

. The Supreme Court alternatively describes the standard as "whether the agency's answer is based on a permissible construction of the statute." *Compare Mayo Found. for Med. Educ. & Research v. United States*, —— U.S. ——, 131 S.Ct. 704, 711, 178 L.Ed.2d 588 (2011) ("arbitrary, capricious, or manifestly contrary to the stat-

ute"), *with id.* at 712 ("permissible construction of the statute"). *See generally id.* at 714 ("[T]he ultimate question is whether Congress would have intended, and expected, courts to treat the regulation as within, or outside, its delegation to the agency of gap-filling authority." (internal punctuation omitted)).

laterally the conditions under which disabled service members qualify for enhanced severance pay, but only to interpret the phrase "during the performance of duty in combat-related operations." *See* § 1212(c)(1)(A). The DoD's interpretation is only entitled to deference if it is within the range of acceptable meanings of "combat-related operations," as those words can be understood using ordinary rules of statutory construction. *Clearing House*, 557 U.S. at 525, 129 S.Ct. 2710 (using "[e]vidence from the time of the statute's enactment, a long line of [Supreme Court] cases, and application of normal principles of construction" to determine "the outer limits" of permissible interpretation). Because Congress specified that service members who are rendered unfit for duty by reason of disabilities resulting from "combat-related operations" are entitled to enhanced severance pay, it cannot be said that Congress expressed *no* intent as to how the DoD should interpret the statute. Thus, the DoD's discretion is not limitless, and the DTM is only entitled to deference if it conforms to the intent of Congress.

b. The Court Will Defer Its Decision Regarding the Limits of Permissible Interpretation of § 1212(c)(1)(A) Pending Remand

■■■ Plaintiff argues that Congress intended "combat-related operations" to include conditions simulating war. Pl.'s Mot. 15. First, plaintiff cites definitions of "combat-related disability" in 10 U.S.C. § 1413a(e), "combat-related injury" in 26 U.S.C. § 104(b)(3), and "combat-related" in paragraph E3.P5.2.2 of DoDI 1332.38. Pl.'s Mot. 17–23. Section 1413a(e) defines a "combat-related disability" for purposes of combat-related special compensation as:

a disability that is compensable under the laws administered by the Secretary of Veterans Affairs and that—

(1) is attributable to an injury for which the member was awarded the Purple Heart; or

(2) was incurred (as determined under criteria provided by the Secretary of Defense)—

(A) as a direct result of armed conflict;

(B) while engaged in extrahazardous service;

(C) in the performance of duty under conditions simulating war; or

(D) through an instrumentality of war.

Section 1632(b) of the NDAA 2008—the same Act that added § 1212(c)(1)(A)—relies upon § 1413a to also define "combat-related disability" for the purpose of providing for reimbursement of travel expenses related to treatment. Section 104(b)(3) of Title 26 defines "combat-related disability" for tax deduction purposes using very similar language and also including "under conditions simulating war" (but omitting reference to injuries for which the member was awarded the Purple Heart). The DoD likewise implemented 26 U.S.C. § 104(b)(3) by including "conditions simulating war" in its own definition of "combat-related" in paragraph E3.P5.2.2 of DoDI 1332.38. Plaintiff argues that Congress's inclusion of "conditions simulating war" in its definitions of these other provisions containing the term "combat-related" is evidence that Congress intended that the DoD define "combat-related operations," as used in 10 U.S.C. § 1212(c)(1)(A), in a similar manner.

Second, according to plaintiff, the DTM renders the "combat-related operations" prong of § 1212(c)(1)(A) superfluous because all (or nearly all) disabilities occurring as a direct result of armed conflict necessarily occur in combat zones. Pl.'s Mot. 23–26. Third, plaintiff notes that, by relying on paragraph E3.P5.1.2 of DoDI 1332.38 to define "combat-related operations," the DTM creates the paradox that disabilities that occur "while participating in *combat operations*" might not qualify as "during the performance of duty in *combat-related operations*" (emphasis added). Thus, according to plaintiff, the DTM renders meaningless the word "related" by defining "combat-related operations" more narrowly than "combat operations." Pl.'s Mot. 26–27. Defendant responds that the DTM does not render "combat-related" meaningless because it includes a "military raid on a ter-

rorist compound or other hostile force in an area not designated as a 'combat-zone.'" Def.'s Resp. to Pl.'s Cross–Mot. for J. upon the AR and Reply in Supp. of its Mot. for J. upon the AR 15.

Contrary to plaintiff's contention, Congress did not leave interpretation of "combat-related operations" to the courts. Instead, it explicitly delegated that authority to the Secretary of Defense. *See* § 1212(c)(1)(A). Even if the Court were persuaded that the best interpretation of "combat-related operations" includes conditions simulating war, the Court would still defer to the DoD's different (but permissible) interpretation. *Chevron,* 467 U.S. at 843 n. 11, 104 S.Ct. 2778 ("The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding."); *see, e.g., Brand X,* 545 U.S. at 984, 125 S.Ct. 2688 (holding that the Ninth Circuit erred by following its own prior *"best* reading" of the statute instead of "apply[ing] *Chevron* to the [FCC]'s interpretation of the definition of 'telecommunications service.'"); *Chenery,* 318 U.S. at 94, 63 S.Ct. 454 ("If the action rests upon an administrative determination— an exercise of judgment in an area which Congress has entrusted to the agency—of course it must not be set aside because the reviewing court might have made a different determination were it empowered to do so.").

 Because Congress authorized the DoD to define "combat-related operations," the Court will require the ABCMR to provide the DoD the opportunity to explain its reasons before the Court applies the *Chevron* test and determines whether the agency's interpretation is a permissible construction of the statute. Even where the agency has failed to adequately support its interpretation, it is not for the Court to review *de novo* the agency's interpretation and guess at its supporting rationale, as the agency is better suited to understand the facts and reasons for its own interpretation. *See Florida Power, 470* U.S. at 744, 105 S.Ct. 1598 ("The reviewing court is not generally empowered to conduct a *de novo* inquiry into the [agen-

cy] matter being reviewed and to reach its own conclusions based on such an inquiry."); *CRAssociates, Inc. v. United States,* 95 Fed. Cl. 357, 384 (2010) ("Unlike defendant, the court will not guess what the agency had in mind, particularly, where review of the evaluation process reveals multiple errors in the agency's decisional path."). In cases such as this where the agency rule is not obviously an impermissible interpretation of the statute, the better course is to provide the DoD an opportunity to explain the reasoning for its rule. *Checkosky v. SEC,* 23 F.3d 452, 462–65 (D.C.Cir.1994) (Silberman, J., concurring) (contrasting cases where "reviewing courts will often and quite properly pause before exercising full judicial review and remand to the agency for a more complete explanation of a troubling aspect of the agency's decision" with "cases where an agency's failure to state its reasoning or to adopt an intelligible decisional standard is so glaring that we can declare with confidence that the agency action was arbitrary and capricious").

## CONCLUSION

Pursuant to RCFC 52.2(a), the Court **REMANDS** this case to the ABCMR for a period of six months. *See* RCFC 52.2(b)(1)(B). On remand, the ABCMR shall provide the DoD an opportunity to explain the reasons for its interpretation of "combat-related operations" in the DTM, particularly its decision to exclude "conditions simulating war" from its definition of "combat-related operations." The ABCMR shall also consider and evaluate plaintiff's argument that the DTM constituted an impermissible interpretation of § 1212(c)(1)(A). The case is stayed pending the results of the remand. *See* RCFC 52.2(b)(1)(C). The Court **ORDERS** defendant to file status reports every sixty (60) days regarding the progress of the proceedings on remand before the ABCMR. *See* RCFC 52.2(b)(1)(D). The first such status report shall be due **Friday, December 28, 2012.**

**IT IS SO ORDERED.**