NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**EDDY JEAN PHILIPPEAUX,**

*Plaintiff-Appellant*

**v.**

**UNITED STATES,**

*Defendant-Appellee*

---

2021-1466

---

Appeal from the United States Court of Federal Claims in No. 1:20-cv-00275-DAT, Judge David A. Tapp.

---

Decided:  September 7, 2021

---

EDDY JEAN PHILIPPEAUX, Miami, FL, pro se.

LIRIDONA SINANI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee.  Also represented by BRIAN M. BOYNTON, MARTIN F. HOCKEY, JR., ELIZABETH MARIE HOSFORD.

---

Before NEWMAN, O'MALLEY, and TARANTO, *Circuit Judges*.

PER CURIAM.

Eddy Jean Philippeaux appeals from a final judgment entered for the United States in *Philippeaux v. United States*, Case No. 20-275C (Fed. Cl. Dec. 1, 2020). Mr. Philippeaux seeks to have his honorable discharge from the United States Navy recast as a disability retirement. The Board for Corrections of Naval Records ("Board") determined that no change to his record was warranted. The Court of Federal Claims ("Claims Court") found that the Board decision was not arbitrary, capricious, unsupported by evidence, or contrary to law, and granted judgment on the administrative record in favor of the United States. On appeal, Mr. Philippeaux challenges the Claims Court's remand to the Board for reconsideration of an earlier decision and the Claims Court's subsequent decision granting the United States judgment on the administrative record. Because the Claims Court's remand decision was not an abuse of discretion and because the Board's decision is supported by substantial evidence, we *affirm*.

## I.    BACKGROUND

In 1977, while on active duty aboard the U.S.S. McCandless, Mr. Philippeaux struck his face against a wall. He suffered a minor laceration near his eye. He received two sutures and then returned to duty.

Three years later, in 1980, he was honorably discharged from the Navy with an RE-1 reenlistment code, designating that he was eligible for reenlistment. Before his discharge, he underwent a medical examination which noted no significant medical conditions. He reported that he was healthy and had no history of head injury, headaches, dizziness, eye trouble, thyroid trouble, chest pain, or memory loss, among other conditions. Performance evaluations from before his discharge reported that he "met the minimum requirements of his rate and job assignment" but exhibited "marginal performance" attributable to

"domestic problems" and his "preparations for his transition to the civilian community." S. App. 1432.[1]

The day after his honorable discharge, he enlisted in the United States Air Force Reserve. Three years later, in 1983, he enlisted in the Air National Guard. Mr. Philippeaux underwent another medical examination for his enlistment in the Air National Guard. He again reported that he was in good health with no history of head injuries, headaches, dizziness, eye trouble, thyroid trouble, chest pain, or memory loss. In 1989, he was discharged from the Air National Guard for unsatisfactory participation.

In 1996, sixteen years after his discharge from the Navy, Mr. Philippeaux sought service-connected disability benefits. The examining physician at a Department of Veterans Affairs ("VA") Outpatient Clinic diagnosed Mr. Philippeaux with dysthymic disorder.[2] The VA awarded Mr. Philippeaux a 70% disability rating due to a "Psychotic Disorder," effective February 27, 1995. The VA later rated Mr. Philippeaux 100% disabled with service-connected "Psychotic Disorder," effective July 1, 2008.

In 2009, Mr. Philippeaux sought service-connected benefits for an alleged traumatic brain injury and residual conditions associated with that alleged injury. The VA denied his claim. Mr. Philippeaux appealed that decision.

In 2018, while his traumatic brain injury disability claim was pending before the United States Court of

---

[1] All S. App. citations refer to the Corrected Supplemental Appendix filed by the United States in this appeal, Dkt. No. 62.

[2] Dysthymic disorder is a chronic depression. *Dysthymia*, JOHNS HOPKINS MEDICINE, https://www.hopkinsmedicine.org/health/conditions-and-diseases/dysthymia (last visited Aug. 11, 2021).

Appeals for Veterans Claims, Mr. Philippeaux applied for correction of his military record to reflect disability retirement pursuant to 10 U.S.C. § 1201. The Board denied Mr. Philippeaux's request, finding that "the preponderance of the evidence did not support a finding that [Mr. Philippeaux was] unfit for continued naval service for any disability condition at the time of [his] discharge from the Navy." S. App. 86. The Board provided two reasons for its determination. First, the Board "could not establish a nexus between [Mr. Philippeaux's] poor performance [leading up to his discharge from the Navy] and any medical condition." S. App. 86. "Second, and more importantly, the Board concluded [that Mr. Philippeaux's] subsequent enlistment in the U.S. Air Force in April 1984 was strong evidence of fitness for active duty at the time of [his] discharge from the Navy in 1980." S. App. 87.

After the Board denied his request, Mr. Philippeaux filed a complaint in the Claims Court asserting, first, that he has a right to disability retirement under 10 U.S.C. § 1201, and, second, that the government violated his constitutional due process and equal protection rights. During that proceeding, the government sought voluntary remand to the Board because the Board had incorrectly stated that Mr. Philippeaux was "fit to enlist in the Air Force approximately 3.5 years after" his 1980 discharge, when Mr. Philippeaux in fact enlisted in the Air Force Reserve only a day after being honorably discharged from the Navy and then enlisted in the Air National Guard in 1983. The government also sought remand to allow the Board to consider additional records submitted by Mr. Philippeaux. The Claims Court granted the government's unopposed motion.

On remand, the Board again denied Mr. Philippeaux's application, finding that the "evidence did not establish probable material error or injustice." S. App. 82. The Board relied on the two physical examinations conducted in 1980 and 1983 in which Mr. Philippeaux had attested to his good health and denied experiencing a litany of

enumerated medical complaints. The Board found that Mr. Philippeaux's post-discharge medical diagnoses and 1996 VA assigned disability ratings were not probative of whether Mr. Philippeaux was fit for continued service as of 1980, particularly because contemporaneous medical records from 1980 reported that he was in good health with no issues. The Board again found that performance evaluations from 1980 documenting Mr. Philippeaux's marginal military performance did not show lack of fitness for continued service, as the Navy also recommended Mr. Philippeaux for reenlistment and he went on to serve in the Air National Guard from 1983 to 1989.

Following the Board's decision on remand, the United States filed a motion for judgment on the administrative record before the Claims Court. The United States also sought dismissal of Mr. Philippeaux's constitutional claims for lack of jurisdiction. The Claims Court granted both.

Mr. Philippeaux appeals the Claims Court's grant of judgment on the administrative record in favor of the United States. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II.    DISCUSSION

Mr. Philippeaux appears to challenge two of the Claims Court's decisions on appeal. First, he challenges the Claims Court's remand to the Board for reconsideration. Second, he challenges the Claims Court's determination that the Board's decision is supported by substantial evidence.

### A.  Remand for Reconsideration

Mr. Philippeaux argues that the remand decision was incorrect for several reasons. He seems to argue that the remand improperly gave the Board a second bite at the apple—an opportunity to correct its prior misstatement of his military service history and develop a new rationale to deny his claim. He asserts that the Board had no authority

to re-adjudicate his claim under 32 C.F.R. § 723.9, which provides that "[a]fter final adjudication, further consideration will be granted only upon presentation by the applicant of new and material evidence or other matter not previously considered by the Board." He appears to argue that the Board's decision after remand was *ultra vires* and, therefore, non-justiciable. He further argues that the remand was an unconstitutional violation of his Fifth Amendment due process rights.

We hold that the Claims Court's remand to the Board for reconsideration was not an abuse of discretion. The Tucker Act, under which the Claims Court had jurisdiction to hear this case, authorizes the Claims Court "to remand appropriate matters to an administrative or executive body or official with such directions as it may deem proper and just." *See* 28 U.S.C. § 1491(a)(2). And precedent from this court and the Supreme Court shows that the Claims Court did not abuse its discretion in remanding in this case.

We have previously identified several circumstances where an agency may request a remand, including to reconsider its previous position without confessing error. *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001). Where an agency requests a remand to reconsider its previous position, "the reviewing court has discretion over whether to remand." *Id.* "[I]f the agency's concern is substantial and legitimate, a remand is usually appropriate." *Id.*

The Supreme Court has held that where "the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir.

2009).  The Supreme Court noted that "[t]he reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." *Fla. Power*, 470 U.S. at 744.  "The focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Id.* at 743.  In a previous case in which a veteran presented new evidence to the Claims Court rather than to the Board, we required the Claims Court to remand to the Board for consideration of that new evidence.  *Walls*, 582 F.3d at 1368.

The Claims Court did not abuse its discretion when it remanded to the Board for reconsideration.  The Board's previous decision evinced a misunderstanding of Mr. Philippeaux's service history which the Board, rather than the Claims Court, was in the best position to correct.  Similarly, the Board, rather than the Claims Court, was in the best position to review new evidence Mr. Philippeaux presented to the Claims Court.  Contrary to Mr. Philippeaux's arguments, the Claims Court did not give the Board an improper second chance to come up with some new reason to deny his claim.  It properly permitted the Board to correct the record and review new evidence.

Mr. Philippeaux's arguments that the Board's decision on remand is non-justiciable, that the Board did not have the power to reconsider on remand because he had not requested reconsideration, and that the remand was a violation of his Fifth Amendment due process rights are unavailing.  First, at no point in these proceedings does it appear that the government admitted that Mr. Philippeaux was entitled to his requested relief.  It merely requested remand for the Board to reconsider its decision in light of the factual inaccuracy in one of the Board's reasons for denying Mr. Philippeaux's claim.  Thus, there was always a live controversy over Mr. Philippeaux's right to his requested relief and the case was justiciable throughout.  Second, 32 C.F.R. § 723.9 provides for Board

reconsideration on an applicant's request, but does not limit a court's ability to remand for reconsideration. The Board was not acting outside of its mandate when it reconsidered the case on remand from the Claims Court. Third, there is no evidence that Mr. Philippeaux was ever denied the "essential requirements of due process": "notice and an opportunity to respond." *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). The record shows that he was provided notice of the government's remand request, the Claims' Courts remand order, and the Board's remand decision. He had the opportunity to participate and respond throughout the proceedings. Indeed, the government called Mr. Philippeaux before they filed their motion for voluntary remand and he informed them that he did not oppose the request.

## B. Judgment on the Administrative Record

Mr. Philippeaux appears to challenge the Claims Court's finding that the Board's decision is supported by substantial evidence. He asserts that, contrary to the Board's decision, overwhelming evidence shows that he was medically unfit for continued military service as of 1980. He argues that this evidence shows that his 1977 injury caused a traumatic brain injury, which went undiagnosed and untreated, and ultimately caused a myriad of issues beginning two months after the initial injury and continuing to appear over the next several years. These various conditions, Mr. Philippeaux asserts, rendered him unfit for continued service as of his 1980 discharge from the Navy.

We review the Claims Court's grant of a motion for judgment on the administrative record *de novo*. *Strand v. United States*, 951 F.3d 1347, 1351 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 894 (2020). "In reviewing an adverse decision of a records correction board, we apply the same standard of review that the Court of Federal Claims applied, without deference." *Id.* This court, like the Claims

Court, reviews records correction board decisions to deter-
mine if they are "arbitrary, capricious, contrary to law, or
unsupported by substantial evidence." *Prestonback v.
United States*, 965 F.3d 1363, 1368 (Fed. Cir. 2020). Sub-
stantial evidence is "such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion."
*Edison Co. v. Labor Board*, 305 U.S. 197, 229 (1938). It "is
something less than the weight of the evidence, and the
possibility of drawing two inconsistent conclusions from
the evidence does not prevent an administrative agency's
finding from being supported by substantial evidence."
*Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620
(1966).

Substantial evidence supports the Board's determina-
tion made after remand. Although there is some evidence
that Mr. Philippeaux suffered various ailments in the
months before and the years after his 1980 discharge, sub-
stantial evidence from that period supports a finding that
he was in good health and was fit for reenlistment.

Mr. Philippeaux discounts the contemporaneous evi-
dence of his medical fitness for reenlistment by asserting
that brain hemorrhage is an "invisible injury" not readily
apparent through outside observation. But that assertion
does not counteract the ample affirmative evidence of Mr.
Philippeaux's good health in 1980. Two weeks before his
discharge from the Navy, he attested to his good health and
stated that he was not currently suffering from, nor had
ever experienced, the myriad symptoms he now claims he
was suffering. The physician conducting his examination
noted no significant medical conditions. He was thus found
eligible for reenlistment. Three years later, Mr.
Philippeaux underwent another medical examination for
his 1983 enlistment in the Air National Guard. He again
attested to his good health and denied experiencing (or ever
having experienced) many of the symptoms he now claims.
He was medically cleared for enlistment in the Air

National Guard and went on to serve for six years, including three years of active duty.

Other evidence further supports the Board's determination. For example, in 1982, Mr. Philippeaux received a computerized tomography scan which revealed that he had a "normal brain" with a "prominent" pituitary gland that "may be in the upper limits of normal." S. App. 277. A physician indicated that a follow-up scan may be needed "to rule out the presence of an increasing pituitary lesion," but did not report concerns of traumatic brain injury. *Id.* A medical record from 1979 indicates that Mr. Philippeaux was referred to an endocrinologist with a provisional diagnosis of possible hyperthyroidism based on reported symptoms of weight loss, mood swings, and anxiety. But, after further examination, Mr. Philippeaux was found to have "no evidence of thyroid disease." S. App. 899.

Mr. Philippeaux argues that negative performance evaluations from 1979 and 1980 and evidence of later-arising medical concerns are evidence of his medical unfitness to reenlist. But his performance evaluations merely report poor performance. They do not indicate that Mr. Philippeaux's marginal performance was due to medical causes. Similarly unavailing is the evidence of later medical issues, such as Mr. Philippeaux's 1982 hospitalization due to chest pain and VA award of a 70% disability rating, effective in 1995, and a 100% disability rating, effective in 2008, due to psychosis disorder and service-connected psychotic disorder. This evidence of later-arising medical issues does not indicate that Mr. Philippeaux was unfit for reenlistment as of 1980. Even if Mr. Philippeaux's marginal military performance in 1980 and later-arising medical diagnoses were attributable to a medical condition from 1980, they would only indicate "the possibility of drawing two inconsistent conclusions from the evidence," which "does not prevent an administrative agency's finding from being supported by substantial evidence." *See Consolo*, 383 U.S. at 620.

### III.   CONCLUSION

We have considered Mr. Philippeaux's remaining arguments and conclude that they are without merit. For the reasons discussed above, we *affirm* the Claims Court.

### AFFIRMED

COSTS

No costs.